STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, APPELLEE, V. FIRST STATE BANK OF ALLIANCE: NATIONAL SURETY COMPANY, INTERVENER, APPELLANT.

FILED FEBRUARY 10, 1932. No. 28139.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*F. C. Radke, Barlow Nye, M. Craft Radke* and *C. M. Skiles, contra.*

*Howell, Tunison & Joyner, amici curiæ.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

From a judgment of the district court, classifying the claim of intervener against defendant, an insolvent state bank, as a general rather than a preferred claim, intervener has appealed. There is no controverted issue of fact. Only questions of law are involved.

The defendant bank became insolvent and was placed in the hands of a receiver in February, 1930. At the time the bank became insolvent Box Butte county had on deposit in the bank $28,961.67. The bank had secured this deposit by the pledge of $10,000 in liberty bonds and three depository bonds, one of which, for $8,500, was furnished by intervener. The liberty bonds have been sold and applied on the amount of the deposit. Intervener has paid to the county the amount of the bond and has taken from the county an assignment of its deposit account to the extent of $8,500. Intervener filed with the receiver its claim, based on the assignment, asking its allowance as preferred, first, as a trust fund and preferred over claims of depositors, and, in the event the court does not so allow it, that it be classified as a valid preferred depositors' claim.

Intervener contends that county funds, derived from the collection of taxes, are trust funds in the hands of the county treasurer; that a bank receiving same for deposit, with such knowledge, must account for the same as trust funds, and that claims for such trust funds are entitled to payment before the payment of claims of other depositors. In support of this contention, intervener cites section 77-2506, Comp. St. 1929, which, in part, provides that the "county treasurer of each and every county in the state of Nebraska shall deposit, and at all times keep on deposit for safe-keeping in the state, national or private banks doing business in the county, and of approved and responsible standing, the amount of moneys in his hands collected and held by him as such county treasurer." The statute also provides for the payment of interest by the bank upon funds so deposited. It is argued that the words "for safe-keeping" indicate a purpose to make it a special deposit or bailment, and that the identical funds shall be kept and preserved and returned or paid out on warrants issued by the county.

Of what value would a deposit be to a bank if it could not use the same and loan money so deposited? By what process of reasoning can it be supposed that any bank would pay interest upon a special deposit which it was not permitted to use but was required to keep separate and apart from other funds of the bank and be liable therefor without any compensation for the safe-keeping of the fund? The question answers itself. Moreover, intervener in its brief makes this statement: "That the interveners, by executing and delivering their depository bonds to Box Butte county, preserved the assets of the defendant bank by causing Box Butte county to keep on deposit in the bank large sums which were vital to the actual continuance of the bank." How could such funds be vital to the continuance of the bank if it had no use of them? Furthermore, in *Shambaugh v. City Bank of Elm Creek*, 118 Neb. 817, speaking of the authority of county treasurers to make deposits in banks, it is held: "Under the

terms of the statutes referred to, general deposits alone are authorized to be made in county depositories by county treasurers, and such, the evidence discloses, were made in the instant case." Clearly, the statute authorizes the county treasurer to place the county funds in his hands in depository banks on general deposit and provides for taking security therefor. The title to the moneys or other credits deposited passes to the bank and may be used by it as other funds deposited in the bank. It follows that the bank did not hold the deposit as a trust fund, and the court properly so determined.

Intervener contends that, as assignee of the county, it was subrogated to the latter's rights and was entitled to have its claim classified as that of a depositor, notwithstanding the provisions of section 8-1,102, Comp. St. 1929. That section, in part, provides: "The claims of depositors, for deposits, not otherwise secured, * * * shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership." Prior to the amendment of the statute in 1925 it read: "The claims of depositors, for deposits, * * * shall have priority," etc. Intervener makes this contention: "That part of paragraph 8-1,102, Comp. St. Neb. 1929, 'not otherwise secured' was intended to cover a situation where a bank has deposited some of its securities as collateral to secure a deposit as distinguished from the depositor having security from an outside source; and also to cover a situation where a bonding company takes collateral from the bank to protect itself, or the assets of the bank are reduced by the pledging of securities with the bonding company, to induce it to execute a depository bond." It is argued that the words "not otherwise secured" were intended solely for the protection of the guaranty fund (now the depositors' final settlement fund).

We do not think the contention sound. It was the in-

tention of the legislature, as expressed in plain language, to classify deposits into two classes, those secured and those unsecured. 'A deposit in a state bank secured otherwise than by the bank pledging its securities or giving a depository bond is not here involved nor decided. The words "not otherwise secured" were inserted in the statute after numerous holdings by this court to the effect that, where a surety on a depository bond had paid the amount to the depositor, it was subrogated to the rights of the depositor and was entitled to have its claim allowed as preferred and payable out of the depositors' guaranty fund. Among the cases so holding are *State v. Kilgore State Bank*, 112 Neb. 856; *State v. State Bank of Gering*, 114 Neb. 213; *State v. Farmers & Merchants Bank*, 114 Neb. 217; *Rogers v. National Surety Co.*, 116 Neb. 170. However, since those decisions were rendered, the statute has been amended as above noted, and the question now is: Would the county have been entitled to have its claim preferred as that of an ordinary depositor, when it had taken security both by pledge of assets from the bank and by depository bonds given by the bank? Clearly, the language of the statute forbids.

An applicable rule is found in 25 R. C. L. 957, sec. 213, which reads: "A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself."

Other states having laws for the guaranty of bank deposits have enacted statutes providing that deposits, otherwise secured, are not protected by the guaranty fund; and the phrase "not otherwise secured" has been the subject of judicial discussion in other jurisdictions. Kansas had such a law, and in *American State Bank v. Wilson*, 110 Kan. 520, decided in 1922, it was determined that any

deposit in the bank which was secured by the bank was not within the protection of the guaranty fund act. Mississippi also had such a law, and in *Board of Levee Commissioners v. Love,* 147 Miss. 183, it was held that deposits, secured by marketable securities and personal bonds, were otherwise secured, under the statute, and were not entitled to participate in the guaranty fund. It was further held that, although the security was inadequate, still the deposit was not within the protection of the guaranty fund. The Kansas decision was published long before the amendment by the legislature of Nebraska, inserting the words "not otherwise secured." No doubt, the legislature of this state placed this phrase in the statute, mindful of the meaning given to it by the supreme court of Kansas.

This court had under consideration the effect to be given this statute in the case of *State v. First State Bank, ante,* p. 109. It was there held: "A city that exacts from a state bank collateral security for deposits, receives the proceeds of the security after insolvency of the bank and presents to the receiver a claim for excess of deposits over such proceeds, is in the class of depositors 'otherwise secured' and not entitled to share the assets of the bank on an equality with depositors in the class 'not otherwise secured,' within the meaning of the statute providing that depositors and holders of exchange in the latter class shall have the first lien." We find no reason to depart from or modify this ruling. It follows that if the statute is valid intervener's claim is not entitled to the same classification as "deposits, not otherwise secured."

It is argued that if the statute is held to mean what its plain language imports then it is special or class legislation and inhibited by the state Constitution; further, that it denies to intervener the equal protection of the law, in violation of the Fourteenth Amendment to the federal Constitution; and that to deny to intervener the same protection as depositors not otherwise secured is inequitable and unjust.

"The banking business, carried on pursuant to a state charter, is quasi-public and, for protection of the public and in its interests, is subject to reasonable regulation by the state." *Citizens State Bank v. Strayer,* 114 Neb. 567. Many years ago the state, by its legislature, in the exercise of its power, undertook to regulate the banking business. It provided that state banking business could only be carried on by duly licensed corporations. It provided for the guaranty of bank deposits by ordinary depositors, and that, upon insolvency of a bank, the depositors and holders of exchange should, subject to certain exceptions, have a first lien on all assets of the bank. It later provided that a depositor, receiving more than a stipulated rate of interest, should not be entitled to this lien, nor to the protection of the depositors' guaranty fund. Later, it enacted the provision which deprived any depositor, whose claims for deposit were otherwise secured, of the right to participate in the guaranty fund or of a first lien on the assets of the bank; and subsequently denied such a depositor the right to participate in the depositors' final settlement fund.

It seems reasonably clear that the legislature was attempting to create a state banking system and to reasonably insure depositors of the safety of funds deposited in state banks, if deposited under certain conditions. The state evidently desired to encourage its citizens to use a state bank and to deposit their funds therein, and, to some extent at least, insure the safety of such deposits if made pursuant to the provisions of the law. It must be observed that no depositor was required to deposit his funds in such a bank, but if he voluntarily did so, in compliance with the law, he would be entitled to the protection; but that, unless he came within the stipulated provisions, he should not be entitled to the same protection.

The rule is well established that "The legislature has power to make reasonable classifications of persons and objects for the purposes of legislation affecting diversely the different classes." *State v. First State Bank, supra.* In

that case it was further held: "Legislative classification of depositors in state banks for the purpose of determining priority of claims in the event of insolvency *held* valid." It seems clear that one who deposits funds in a state bank, relying solely on the solvency of the bank, and, in case of insolvency of the bank, he should have a first lien on the assets and be entitled to participate in the depositors' final settlement fund, is in a distinct class from those persons who are unwilling to make deposits in this manner, but who insist upon receiving from the bank either a pledge of some of its assets as security, or a depository bond from the bank as a guaranty of their deposits. We are satisfied that there is sufficient distinction in the classes to make the classification a valid one, and we adhere to the rule announced in *State v. First State Bank, supra.*

In this connection, it may be observed that a brief *amici curiæ* has been filed in this case, which contends that where a depositor takes an indemnity bond to secure himself, and pays for the bond, and such bond is not paid for by the bank, nor any assets of the bank pledged, either to the depositor or to the surety on the bond, he is entitled to participate in the lien granted to depositors, not otherwise secured, and to participate in the depositors' final settlement fund. That question is not involved in this case and is not here decided. In the instant case there were both a pledge of assets by the bank to the depositor and depository bonds furnished and given by the bank to the depositor.

We are unable to perceive wherein the statute violates the equal protection clause of the Fourteenth Amendment to the federal Constitution. The surety on the depository bond received a premium from the bank for executing the bond. It was aware of the fact that the county had taken a pledge of some of the bank's assets for the protection of the county's deposit, and it also accepted from the bank a depository bond, with intervener as surety. Intervener had the right to demand from the bank a pledge of assets to secure it, or it could have exacted such premium as it

deemed adequate to compensate it for the liability incurred. The statute operates alike on all in each class. In our opinion, the statute does not violate the equal protection clause of the Fourteenth Amendment to the federal Constitution; nor do we perceive wherein it is unjust or inequitable. Intervener is in a similar position to one who loans money and takes no security, although he might have refused to lend the money without security being given. If he chose to lend the money without security, he cannot complain if others, by operation of law which was in force at the time he made the loan, obtain a first lien upon the assets of his debtor.

We are constrained to hold that the judgment is not vulnerable to any of the attacks made upon it.

AFFIRMED.