DAWSON COUNTY V. LORENZO D. WHALEY ET AL.: CARL E. FAUGHT ET AL., APPELLANTS: CITY OF COZAD, APPELLEE.
279 N. W. 164

FILED APRIL 15, 1938. No. 30293.

*Frank M. Johnson,* for appellants.

*Elbert Smith, Cook & Cook* and *R. E. Bannister, contra.*

· Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This is an appeal by two bidders from an order of the

district court, setting aside the sales made by the sheriff to such purchasers, in a tax foreclosure suit.

On November 18, 1936, the county of Dawson as plaintiff filed an action to foreclose the lien for taxes upon some 13 or more tracts of real estate situated in the city of Cozad, Dawson county, all tracts being joined in one action under section 77-2039, Comp. St. Supp. 1937.

The appellants herein were the purchasers of the tracts of real estate set out in the first and second causes of action in such petition, which foreclosure was brought by the county of Dawson as trustee for all of the political subdivisions which were entitled to receive a portion of said taxes. At the sale of the said property, held May 24, 1937, the property described in the first cause of action was sold to D. M. Burgess, appellant, for the sum of $155, and the property described in the second cause of action was sold to Carl E. Faught for the sum of $155.

On June 2, 1937, the city of Cozad filed a motion, asking that the court set aside a number of said sales, including the sales to the two appellants herein, for the reason that the amounts bid were grossly inadequate, and did not represent the fair value of the property, and were insufficient to pay either the general taxes or the special assessments of said city, which were all included in said foreclosure, and for the further reason that a subsequent sale would realize a greater amount. The plaintiff, the county of Dawson, did not join with the city of Cozad in said motion, nor did it file any motion to the same effect on its own behalf to set aside such sale, nor did said county appear or file a brief in this court.

On June 22, 1937, said motion came on for hearing in the district court, and the court refused to set aside some of the sales that were had, but sustained the motion of the city of Cozad to the first, second, fifth, and sixth causes of action. The court's order, setting aside the sales in the first two causes of action, has been appealed to this court by the bidders at such sales, who are appellants herein.

As to each of these first two causes of action which are before us, the general taxes due to the state, county, school district, and city of Cozad, and which were delinquent, amounted to more than the amount bid by the purchasers, and the amount due to the city of Cozad for special improvement assessments for curbing, guttering, grading, and graveling in certain improvement districts also amounted to more than the amount bid by the purchasers of the respective tracts.

A separate decree of foreclosure was entered by the district court upon the first cause of action on March 22, 1937, and in such decree the court found that the amount due was $842.42, with 7 per cent. interest, and entered an attorney's fee of $84.24.

The trial judge entered a decree of foreclosure upon the second cause of action on February 8, 1937, and found the total amount due upon the tract of land therein set out, to wit, lot 12, block 5, in Pearson & Cumming's addition to the city of Cozad, to amount to $457.12, with interest at 7 per cent., and included in the costs an attorney's fee of $45.71.

There were attached as exhibits the affidavits of Ben A. Johnson, dated June 9, 1937, in which he sets out that, if a new sale was held on the first cause of action, he would bid the sum of $1,000 or more, and for the property described in the second cause of action the sum of $500 or more; and the affidavit of Charles H. Sheets that, if a new sale was held, he would bid more than the bid made at the sale on each of said tracts; and the affidavit of R. S. Perry that, if a new sale was held, he would bid $400 on the property set out in the first cause of action.

At the said hearing in the district court, a number of the bidders were personally present or represented by counsel, and offers of increased bids were made, as shown by affidavits in the first, second, fifth, and sixth causes of action, and the court found that said sales on the first and second causes of action should be set aside and new sales ordered, and directed the sheriff to return the pur-

chase price paid in by such bidders and hold another sale.

The bidder of the property described in the second cause of action gave a supersedeas bond in the sum of $350. The purchaser under the first cause of action gave only a cost bond in the sum of $75. The sheriff's return to the second order of sale, under date of July 28, 1937, shows that at the second sale he sold the property set out in the first cause of action to G. W. Eaton for the sum of $300; that the costs of the sale amounted to $123.10, leaving a net amount of $176.90 to be applied upon the taxes. In his return the sheriff shows that no sale was made of the tract described in the second cause of action because a supersedeas bond had been put up.

It is plain to be seen, by the return of the sheriff, that at the second sale R. S. Perry did not bid $400, as he had set out in his affidavit, nor did Ben A. Johnson bid $1,000, as promised in his affidavit, for the property described in the first cause of action, but the same was sold to one G. W. Eaton for $300, which implies that these affidavits were not made in good faith, and were not intended to be *bona fide* bids by the affiants. Yet, it was upon these affidavits that the court set aside the sale.

The bill of exceptions discloses that E. A. Cook, Jr., testified on behalf of the appellants that his law firm of Cook & Cook was employed by the county commissioners as assistant to the county attorney for the purpose of bringing this foreclosure action. That, in addition to the legal notice of the sheriff's sale, which was published in the Cozad Local for five weeks prior to the sale, hand-bills were prepared and printed and circulated in the city of Cozad, advertising the sale, and showing the legal description of the property, as well as a general description by streets, so that any one could easily locate the property which was to be sold for taxes; that a copy of this handbill was also printed in the local newspaper on Friday prior to the sale.

Mr. Cook also testified that, in a conversation had with

the mayor of Cozad prior to the sale, he told the mayor that, at a similar sale in which a number of Gothenburg properties had been sold a few weeks prior, the city of Gothenburg was represented and bid on a number of the properties, and as a result increased the sale price, and that, in his opinion, it would be advisable for the city of Cozad to do the same thing. As a result of that conversation, Mr. Cook prepared and sent to the mayor of Cozad a letter, giving a list of all the properties, giving the name of the owner, the amount of the decree, the amount of the general taxes, and also the amount of the special assessments of the city of Cozad on each property.

He testified further that he advised the mayor in such letter that the city would have to put up the costs and the amount of the general taxes on any property that was bid in by the city. Witness also testified that he attended the sale; that there were about 15 people there from the city of Cozad, and that the city attorney of Cozad attended the sale, but did not bid on any of the property on behalf of the city of Cozad. He further testified that the sale began at 1·o'clock in the afternoon, the notice of the sale was read, and each piece of real estate set out in the separate causes of action was auctioned off separately, and ample time given to receive any additional bids which any one present might desire to make, and the sale was not completed until 3:30 or 4 o'clock in the afternoon.

D. M. Burgess, one of the appellants, testified that at the first sale there was a bid upon the property described in the first cause of action of $150, and that he then placed his bid of $155, and that was the highest bid. He testified that, in the condition that the property is in, it is worth from $400 to $450 for immediate possession, but that he did not know what it would be worth in two years from that date.

Among the errors relied upon for reversal, it is charged that the court's order setting aside the sale was entered pursuant to a motion made by one not a party to the litigation, who has not complied with the statute authorizing intervention.

It is further charged that the court erred in setting aside the sales involved without any statutory authority therefor, and that the decision is contrary to the evidence and to the law.

"A bidder at a judicial sale whose bid has been accepted may appeal from an order setting the sale aside." *Penn Mutual Life Ins. Co. v. Creighton Theatre Bldg. Co.*, 51 Neb. 659, 71 N. W. 279. For, when a bid is made and accepted, rights become vested thereby. 16 R. C. L. 113, sec. 81. For, by the acceptance of his bid, the bidder becomes subject to the jurisdiction of the court and concluded by its orders, and he may be required and compelled to perform his bid; and it has been held that, if a purchaser fails to comply with his bid, a resale may be ordered at his risk and he be held for a loss if the resale is for a less amount. *Rife v. Swanson*, 109 Neb. 814, 192 N. W. 498.

As a bidder thus incurs obligations, he also acquires rights, one of which is to enforce the confirmation of the sale if it be a valid sale and the proceedings have been regular. *State v. Denton State Bank*, 126· Neb. 486, 253 N. W. 670.

This action is based upon section 77-2039, Comp. St. Supp. 1937, which provision was first enacted as chapter 73, Laws 1903, and has been recently amended, as found in chapter 162, Laws 1935, and the last two lines were added by amendment in section 14, ch. 167, Laws 1937. To avoid setting out this long act in full herein, we will abridge the same and set out briefly the provisions in so far as required by the issues presented in the case at bar. This law provides a full, complete, and definite procedure by which counties may foreclose the lien for certain taxes delinquent in the respective counties.

The tract of real estate must have been offered for sale for delinquent taxes for three consecutive years and not sold for want of bidders.

The county may include many separate parcels of land in one action, but the court in its decree shall find the

amount due against each parcel, and also apportion a share of the costs thereof to the date of the decree. It is specifically set out that the sale is to be conducted as are sales of real estate upon execution, and then sold to the highest bidder for cash.

When the purchaser has paid in the amount of his bid, the sale cannot be confirmed for two years, and the purchaser in the meantime is required to pay all taxes which are thereafter levied against such land during such period of two years, and all the tax receipts showing such payments are required to be filed with the clerk of the district court. During such two years the owner of the fee, or any person having a legal interest in a tract of land so sold, may redeem the same by paying to the clerk of the court, not the amount paid in by the bidder, but the full amount of taxes due on such tract of land, together with the subsequent taxes paid by the purchaser, with interest at 7 per cent., and a proportionate share of the costs up to the date of such redemption.

After the two years have expired and the bidder has paid all of the taxes for the two years, then, upon motion of the county attorney, the district court enters an order of confirmation, directing the sheriff to make and deliver a sheriff's deed to the bidder for any tract of real estate not redeemed. From the proceeds of such a sale, the costs of the foreclosure action are first paid; then the balance is paid to the governmental subdivisions entitled thereto in discharge of their tax liens, and if there is a surplus it shall be paid by the clerk of the court to the person entitled thereto, but if the proceeds, after deducting the costs, are insufficient to pay all of the taxes, the amount is then prorated among the governmental subdivisions and the land released from all liens for all taxes included therein, each tract of real estate being kept separate throughout the entire proceedings.

In *Gibson v. Peterson,* 118 Neb. 218, 224 N. W. 272, it is stated: "Where the language of a statute is clear and unambiguous it should be given effect according to its

plain terms." And, further: "Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *State v. First State Bank of Alliance,* 122 Neb. 502, 240 N. W. 747. See, also, 25 R. C. L. 957, sec. 213.

It appears to the court that section 77-2039, Comp. St. Supp. 1937, is unambiguous. It is complete, and does not omit any necessary provision. Therefore, the general provisions with reference to confirmation of ordinary foreclosure sales, such as, for instance, a nine months' stay, are not applicable to this form of tax foreclosure sales.

"It is an established rule of construction in this state that special provisions in a statute in regard to a particular subject control general provisions." *Mancuso v. State,* 123 Neb. 204, 242 N. W. 430. It was also held in the same case that, generally, where there is a conflict between a general and a special statute applicable to the same subject-matter, the latter must prevail.

This court has often held that mere inadequacy of price in a sale under foreclosure will not justify a court in refusing confirmation, unless such inadequacy is so great as to shock the conscience of the court, or amount to evidence of fraud. *Lemere v. White,* 122 Neb. 676, 241 N. W. 105; *Nelsen v. Doll,* 124 Neb. 523, 247 N. W. 44.

Now, in considering whether the bid of $155 amounts to fraud, or shocks the conscience of the court, we must face these facts: The successful bidder at the first sale bid $155; he was required to pay in that amount in cash, and, in addition, to pay all general taxes and any and all graveling, curbing, grading, guttering, or any other special assessments which might be assessed against this property within the following two years. However, the successful bidder could not secure a deed for the property, for during this two-year period the former owner, or any person having a legal interest in said property, had the right to redeem the same from such sale.

Under the necessity of advancing the amount of his bid for two years, and being required to pay taxes and assessments in full during said period, and considering the possibility of redemption, this court does not believe the price bid was so inadequate as to be evidence of fraud, or a shock to the court.

We have reached the conclusion that the trial court was in error in rejecting the bids as originally accepted by the sheriff, and such order is hereby

REVERSED.