WALLACE C. RICHTER, APPELLEE, V. CITY OF LINCOLN, APPELLANT.

285 N. W. 593

FILED MAY 12, 1939. No. 30518.

*Ralph P. Wilson, Clarence G. Miles* and *Frederick H. Wagener,* for appellant.

*Lloyd E. Chapman, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is an action at law to recover certain sums paid to the city of Lincoln as and for occupation tax on certain taxicabs operated as such during the period for which such tax was assessed. The essential allegations of the petition herein include the following: That plaintiff, and fourteen others named therein, duly licensed taxicab owners and operators under the ordinances of the city of Lincoln, Nebraska, and the statutes of the state of Nebraska, associated together and carrying on their joint business in the manner described in such petition, severally operate their respective taxicabs as such, under the trade-name of the "Checker Cab Company," but are not incorporated; that on or about the 1st day of June, 1937, plaintiff and his fourteen associates, under the provisions of sections 22-209 and 22-210 of art. II, ch. 22 of the Lincoln Municipal Code for 1936, were, as owners, each compelled to pay, and did pay under protest in writing, an annual license fee for 1937 of $1, and an annual driver's license fee for 1937 of $1, and also an annual occupation tax in the sum of $15 for each cab licensed. The reason set forth in each of these protests in writing is that the ordinance is invalid because it is discriminatory and denies taxicab owners of the city equal protection of the laws; that thereafter, within 30 days, a claim in writing for refund was duly presented to the proper authorities of the city of Lincoln and disallowed; that thereupon each of plaintiff's associates duly assigned their respective claims for refund of the $15 so paid to plaintiff herein, who prosecutes this action for the recovery of all the amounts thus paid. The substantial basis of the recovery thus sought is the claim that the $15 thus levied and collected from plaintiff and his assignors on their respective taxicabs was levied without power and authority, under section 22-210 of the Lincoln Municipal Code for 1936, the terms of which were unauthorized by the provisions of the city's charter, and is discriminatory, and in effect denies to plaintiff and his assignors as taxicab owners the equal protection of the

laws, both under the state and the federal Constitutions. In support of the allegations thus made, six distinct reasons were alleged which will be later discussed herein.

To this petition the defendant demurred generally, "for the reason that said petition does not state or allege facts sufficient to constitute a cause of action."

Upon a hearing, the demurrer was overruled, and the city electing to stand upon its demurrer and plead no further, judgment was entered as prayed in favor of plaintiff. The trial court found specifically "that the allegations of plaintiff's petition are true," and "that the annual occupation tax for the year 1937 in the amount of fifteen dollars levied and collected by defendant from the plaintiff and each of his assignors herein, upon each of their fifteen taxicabs in the total amount of $225 was erroneously and illegally levied and collected by the defendant without power or authority under its home rule charter, or the law, so to do, and was discriminatory, and denied the plaintiff and his assignors of the equal protection of the laws" under the Constitution of the state and under the federal Constitution.

"A demurrer admits all the allegations of fact in the pleading to which it is addressed, which are issuable, relevant, and material, and which are well pleaded. * * * A demurrer admits allegations only of fact. It does not admit conclusions of the pleader, except when they are supported by, and necessarily result from, the facts stated in the pleading. It does not admit inferences of the pleader from the facts alleged, nor mere expressions of opinion, nor theories of the pleader as to the effect of the facts, nor allegations of what will happen in the future, nor arguments. * * * It does not admit allegations contrary to facts of which judicial notice is taken, or which are contrary to law." 6 Standard Ency. of Procedure, 943-952. See, also, *Salsbury v. City of Lincoln,* 117 Neb. 465, 220 N. W. 827; *Markey v. School District,* 58 Neb. 479, 78 N. W. 932.

We are quite of the opinion that the issues properly raised by the demurrer in this case are to be restricted to

those determined by the district court in its special findings hereinbefore set forth.

Appellee contends that the only specific authority in Lincoln's home rule charter for levying a license fee and an occupation tax on any business is subdivision 10, sec. 2, art. II thereof, which reads as follows:

"To raise revenue by levying and collecting a license *or* occupation tax on any person, partnership, corporation or business, within the limits of the city, and regulate the same, except as otherwise in this charter provided. All such taxes shall be uniform in respect to the class upon which they are imposed." (Italics supplied.)

He also insists that the word "or," used in the above provision, is a disjunctive particle that marks an alternative and is never construed to mean "and." Therefore, while the city is empowered under the provision quoted to levy and collect a license tax *"or"* to levy and collect an occupation tax, it cannot do both with respect to any particular subject of taxation. And the inference would seem to follow the contention thus made that, in the event of an attempt to exercise both powers by the city, the taxpayer would possess the power of election as to which to pay.

Under the facts and circumstances of this case, appellee's contention may not be sustained for two reasons.

The language quoted above, which is relied upon to sustain appellee's position, in its present form first became a part of Lincoln's statutory charter in 1905. Comp. St. 1905, sec. 1223. It was in express terms later incorporated into and reenacted as a part of the "Home Rule Charter" of that city, and as such still remains unchanged. But, by virtue of section 12, ch. 9, Laws 1907, approved with an emergency clause on April 6, 1907, the following language became a part of, and was incorporated into, the then statutory charter of the city of Lincoln, viz.: "To levy an occupation tax on public service property or corporations in such amounts as may be proper and necessary, in the judgment of the mayor and council, for purposes of revenue; said occupation tax may be based upon a certain percentage

of the gross receipts of such public service corporation or upon such other basis as may be determined upon by the mayor and council."

This provision above quoted was also incorporated in and remained as subdivision 1, sec. 2, art. II of Lincoln's home rule charter. While there has been a slight change in the verbiage employed in the incorporation of the above enactment in the home rule charter, the legal import of the same still remains unchanged and unmodified. The historical situation surrounding the original adoption of the amendment last above referred to may be gleaned from the records of this court. In *Nebraska Telephone Co. v. City of Lincoln*, 82 Neb. 59, 117 N. W. 284, this court sustained the legality of ordinance No. 448 passed by the city of Lincoln in 1907, providing that all telephone companies doing business in the city should pay an occupation tax equal to 2 per cent. of the gross receipts from exchange rentals, etc. And from the files in the records of the case last above cited, we learn that the mayor and council "have levied an occupation tax, not upon the appellant herein only, but upon street railways, gas and electric lighting companies and other public service corporations, and not only the appellant herein is contesting the validity of such tax, but the same with a few exceptions is being contested by all the corporations against which such taxes are levied, on the ground that the ordinances levying the same are technically invalid, and for the reason that the city is primarily without authority to levy such taxes," and that this question was then of great interest to the public.

Historically it thus appears that the language herein quoted from subdivision 1, sec. 2, art. II, which was employed to cope with a public emergency, as well as the form and terms thereof, discloses that it is a remedial act and entitled to be construed as such, having in view, however, the subject-matter to which it relates.

"Where the general intent of the legislature may readily be discerned, yet the language in which the law is expressed leaves the application doubtful or uncertain, the courts may

have recourse to historical facts or general information, in order to aid them in interpreting its provisions." *Nebraska District of Evangelical Lutheran Synod v. McKelvie,* 104 Neb. 93, 175 N. W. 531. See, also, *State v. Fremont, E. & M. V. R. Co.,* 22 Neb. 313, 35 N. W. 118; *Becker & Degen v. Brown,* 65 Neb. 264, 91 N. W. 178.

Then, too, the provision under consideration applies only to "public service property" and "public service corporations." It is in fact a limited or special statute. *Mancuso v. State,* 123 Neb. 204, 242 N. W. 430; *Dawson County v. Whaley,* 134 Neb. 509, 279 N. W. 164.

It thus comes within the full scope of the rule of construction whereby "A particular intention expressed in a legislative act, if in conflict with a general intention expressed in a later enactment, should be given effect, leaving the later act to operate only outside of the scope of the former." *Plattsmouth Bridge Co. v. Turner,* 128 Neb. 738, 260 N. W. 562. See, also, *Dawson County v. Whaley, supra.*

Therefore, it would follow that an occupation tax ordinance based on, passed pursuant to, and within the limits prescribed by, the special provision of subdivision 1, sec. 2, art. II of the home rule charter, would not, as to rights of taxation created therein, and thereby, be controlled, affected or limited by the general provisions contained in subdivision 10, sec. 2 thereof, but would, within the scope of its basic charter provision, be given full force and effect wholly unmodified by the general terms of the latter or any implied limitation which the text of the latter might create or sustain.

Therefore, conceding arguendo the contention of appellee as to the force and effect of the word "or" in subdivision 10, sec. 2, art. II, it would in no manner affect the exercise of legislative powers under subdivision 1, sec. 2, art. II of the home rule charter.

Recurring to the provisions of such subdivision 1, sec. 2, art. II, we note this special provision, so far as the field of taxation is concerned, is limited to two subjects, viz.: To

"public service property" and "public service corporations."

Webster's New International Dictionary, Unabridged (2d ed.), defines "public service," as "The business of supplying some commodity (as gas, electricity, power, water) to any or all members of a community, or of providing some service (as transportation, as by railroad or bus or by pipe line; communication, as by telegraph or telephone; elevating grain; maintaining stock yards) where exercise of the calling involves some legal privilege or a natural or virtual monopoly."

Public service corporations would therefore mean taxable corporations engaged in the business as public service is defined, and public service property would include only taxable property employed in public service as thus defined. This is in harmony with the use of the terms as employed in other provisions of the Lincoln home rule charter, and for the purpose of this opinion is accepted as a workable definition of the same.

Section 22-210 of the Lincoln Municipal Code for 1936, assesses the occupation tax in suit in the following language, viz.: "There shall be paid to the city treasurer an annual occupation tax, in the sum of Fifteen Dollars ($15) for each taxicab licensed." From the petition we glean that the taxicabs in suit have complied with the state law on that subject, and are indeed common carriers of passengers over the streets of the city of Lincoln. Subject to certain exceptions not essential to the consideration of the question now considered, "taxicab" is defined as "A motor vehicle, fitted with a taximeter which indicates the fare for the distance covered, used within or without the corporate limits of any city or village as a common carrier for the transportation of passengers for hire," etc. Comp. St. 1929, sec. 60-201.

So far as disclosed by the petition, the taxicabs taxed are wholly engaged in the services defined by this statute as common carriers. They thus constitute "public service property," the use of which is subject to the levy of an occupation tax as such under the provisions of subsection 1,

sec. 2, art. II. They are therefore not subject to the claimed implied limitation created by the use of the word "or," as used in subdivision 10, sec. 2, art. II of such municipal charter, from which no authority is necessarily derived.

And as a second reason for sustaining the occupation tax· here in suit, we are unable to approve the contention of the appellee as to the proper construction and effect of the word "*or*," as embodied and employed in subsection 10, sec. 2, art. II of the home rule charter. It is conceded that this provision, which we have hereinbefore quoted, as an entirety, vests the municipality with police power to regulate through a license, and with taxing power to levy a proper occupation tax. We have held the inherent nature of the power to license and the power to tax in this manner were in no respect inconsistent, and that both might be exercised with reference to the same business. *McCarter v. City of Lexington*, 80 Neb. 714, 115 N. W. 303; *Morgan v. State*, 64 Neb. 369, 90 N. W. 108. Both powers are highly important in the support of local government and the proper maintenance of order and well-being of the inhabitants thereof in the inherent nature of things. No reason exists why the exercise of either power by the municipality should preclude the exercise of the other. No possible reason can exist for the fact, if such it is, that if the municipality maintains the safety and good order of its inhabitants through the power to license, thus conferred, it shall be inevitably debarred of the right to receive the tax necessary for its support. It is obvious that such a construction should not be accepted unless such legislative intent evidenced by the provision in question is clear and obvious. However, in this connection, it will be noted that in the present instance nothing in the context in which it is found, save and except the word "or" itself, tends to sustain appellee's contention. It will also be remembered that "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious,

their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context. In *People v. Rice,* 138 N. Y. 151, 156, 33 N. E. 846, it is said that the words 'and' and 'or' when used in a statute are convertible as the sense may require. The word 'or' in a statute may have the meaning of 'that is to say,' 'to wit,' etc." 2 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 397.

So, "or" may be construed as "and" to avoid absurd or unreasonable results. Thus, in *Manson v. Dayton,* 153 Fed. 258, we find this language, viz.:

"Among the rules of construction to prevent incongruities and absurdities is that the word 'and' may be read 'or' and *vice versa,* as 'these words are said to be convertible with each other as the sense of the enactment (or contract) and the necessity of harmonizing its provisions may require.' Endlich on Interpretation of Statutes, sec. 303. This rule is predicated on the assumption that it could not have been intended to produce absurd and unreasonable results; 'and consequently, when such effects would follow a literal construction of the statute, the conjunctive particle may be read as disjunctive, or *vice versa,* on the theory that the word to be corrected was inserted by inadvertence or clerical error.' See, also, *Thomas v. Grand Junction,* 13 Colo. App. 80, 84, 85, 56 Pac. 665; *Kitchen v. Southern Railway Company,* 68 S. Car. 554, 48 S. E. 4."

So, if it be conceded that even if the ordinance here in question must be sustained as being authorized by subdivision 10, sec. 2, art. II alone, it is obvious that, in view of the nature of the two powers under consideration, the construction contended for by appellee would be manifestly unreasonable and absurd, and the cause of good government would not be promoted thereby. The conclusion follows that, under the authorities cited, the legislative intent actually expressed is that the word "or," involved in the instant case, must be construed as "and," and thus the validity of the ordinance here challenged is sustainable as being within the powers granted to the city of Lincoln.

In reference to appellee's contention that the effect of the ordinance is unjust and discriminatory in its classification and denies to the person it touches the equal protection of the laws under the Constitutions of the state and of the nation, the majority opinion of the supreme court of the United States in *Quaker City Cab Co. v. Commonwealth of Pennsylvania*, 277 U. S. 389, 48 S. Ct. 553, says, in part:

"The equal protection clause does not detract from the right of the state justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation."

There seems to be no similarity between the taxicab business and the several employments which are untaxed by city authorities, relied upon by appellee, save and except that all make use of the streets. That alone is insufficient. The appellee and his associates as the "Checker Cab Company" are not in any manner, as common carriers of passengers, subject to competition in their business by the individual firms or corporations, the omission of which by the terms of the ordinance he alleges, and of whom he complains. There can be no complaint of the city of Lincoln's classification of "taxicabs" as the subject of imposition of an occupation tax. The classification is not arbitrary and has a reasonable relation to the subject of the particular legislation. It necessarily embraces all that are engaged in the business now taxed. The only constitutional requirement applicable to the situation is that all taxes shall be uniform in respect to the class upon which they are imposed. The facts alleged in plaintiff's petition below wholly fail to effectually challenge the propriety and legality of the classification by the mayor and council, upon which the ordinance in suit is based. The undoubted controlling principles invoked by the present situation are, viz.:

"All occupations need not be taxed. One or more may be taxed and others not taxed. * * * Considerations of

.general policy determine what the selection shall be in such cases, and there is no restriction on the power of choice unless one is imposed by Constitution. Constitutional provisions requiring equality and uniformity of taxation do not apply to this kind of taxes, and there need be no uniformity as between different occupations." 4 Cooley, Taxation (4th ed.) 3393, sec. 1685.

It follows that the trial court erred in overruling the demurrer in this action and in the judgment entered therein.

The judgment of the district court is, therefore, reversed and the action dismissed.

REVERSED AND DISMISSED.

PAINE, J., dissenting.

I respectfully dissent from the opinion adopted in this case, and specifically from that part of it which construes the word "or" to mean "and."

Subdivision 10, sec. 2, art. II, home rule charter of Lincoln, reads as follows: "To raise revenue by levying and collecting a license *or* occupation tax on any person, partnership, corporation or business, within the limits of the city, and regulate the same, except as otherwise in this charter provided. All such taxes shall be uniform in respect to the class upon which they are imposed."

It is my idea that "or," as used in this section, is a disjunctive particle, and gives an election to do one of two things; that is, to levy either a license fee *or* an occupation tax, because that is exactly what the people intended, as I view it, when they adopted the home rule charter.

"The word 'or,' used in a statute, is a disjunctive particle." *Ohio Fuel Supply Co. v. Paxton*, 1 Fed. (2d) 662.

In *Georgia Paper Stock Co. v. State Tax Board*, 174 Ga. 816, 164 S. E. 197, the court said: " 'Or' is never construed to mean 'and' when the evident intent * * * would be thereby defeated."

In *Pompano Horse Club v. State*, 93 Fla. 415, 111 So. 801, 52 A. L. R. 51, the second syllabus paragraph in 52 A. L. R. 51, reads: "In its elementary sense, the word 'or' is a disjunctive particle indicating an alternative. It often

connects a series of words or propositions, presenting a choice of either." And in the text it is stated: "In statutes of this nature, however, the word 'or' is usually, if not always, construed judicially as a disjunctive unless it becomes necessary in order to conform to the clear intention of the Legislature to construe it conjunctively as meaning 'and.'"

As stated in the petition: "11. That when section 22-210 of the Lincoln Municipal Code for 1936, was originally enacted, the taxicab ordinance, of which it was a part, provided that licensed taxicabs shall have taxicab stands in the congested area of the city for their exclusive use, and such occupation tax was considered a tax for that exclusive right and privilege, by the city council of the city of Lincoln; that thereafter and prior to the year 1937, the defendant, city of Lincoln, Nebraska, abolished taxicab stands and enacted section 22-219 of article 2, chapter 22, of the Lincoln Municipal Code for 1936, which was in force at all the times herein mentioned, and which" forbids parking taxicabs in the down-town section, and forces them to get their own parking lot. Any observant person, in trying to park a car in the congested down-town district of Lincoln, will see the truth of the allegations of the petition that taxicabs are not allowed to park there only when hired on an hourly basis.

It is set out in paragraph 13 of said petition that trucks transporting freight are not required to pay an occupation tax, although they make the same use of the streets to make money as taxicabs do, yet the city provides such trucks with adequate loading zones reserved for such trucks alone in every block, but taxicabs are not given any such rights, and are clearly discriminated against in this regard.

In my opinion, a city ordinance that is as unjust and discriminatory in its classification as the Lincoln ordinance denies to taxicab owners equal protection to which they are entitled under the Constitution and laws of Nebraska.

In *Ernesti v. City of Grand Island,* 125 Neb. 688, 251 N. W. 899, this court held: "A city ordinance, affecting

barber shops and barbers, but expressly exempting from the provision beauty shops and operators therein, though doing similar work, is arbitrary and discriminatory; the classification not resting upon any reason of public policy or upon any substantial difference of situation or circumstances, the ordinance is unconstitutional and void."

In *State v. Wiggenjost,* 130 Neb. 450, 265 N. W. 422, the Lincoln sign ordinance was involved, and this court said: "Before hanging a single sign defendant was required by the sign ordinance, in addition to a permit costing one dollar, to pay a 10-dollar license fee for an entire year. This license burden seems better calculated to increase the mournful numbers already on public relief than to promote public peace, public health or public safety." The court concluded: "The vocation of painting and hanging advertising signs does not imply any sinister influence on the public, calling for municipal surveillance in the form of a license in addition to an inspector's regulatory permit and a fee for each sign."

In *Gray v. City of Omaha,* 80 Neb. 526, 114 N. W. 600, it was held unlawful to require a person desiring to make artificial stone to procure a license and pay a fee of $10 a year.

Judge Shepherd, an experienced trial judge, decided this matter in the district court against the contentions of the city, and found specifically, as set out in the main opinion: That the allegations of plaintiff's petition are true; that the annual occupation tax, in the amount of $15, levied and collected from the plaintiff, was erroneously and illegally levied and collected by the city without power or authority under its home rule charter, or the law, so to do, and was discriminatory; that it denied the plaintiff and his assignors equal protection of the laws, under the Constitution of the state and the Constitution of the United States, and held that the plaintiff was entitled to recover judgment from the defendant in the sum of $225.

In my humble opinion, this disposition of the case by the trial court was right, and should have been affirmed.