A-1 FINANCE COMPANY, INC., CRETE, NEBRASKA, A CORPORATION, APPELLANT, v. CHARLES A. NELSON ET AL., APPELLEES.

85 N. W. 2d 687

Filed October 25, 1957. No. 34206.

*Dredla & Dredla* and *Crosby, Pansing & Guenzel,* for appellant.

*Gerald J. Hallstead* and *Nelson & Harding,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

Messmore, J.

This is an action brought by the A-1 Finance Company, Incorporated, a licensee under the installment loan law, as plaintiff, against Charles A. Nelson and Hattie Nelson, defendants, in the district court for Saline County, to foreclose a chattel mortgage executed by the defendants in the sum of $5,200, dated February 14, 1953, to secure a promissory note in the same amount executed and delivered to the plaintiff by the defendants on the same date. Defendants filed a general demurrer to the plaintiff's amended petition which was sustained by the court. The plaintiff elected to stand upon its amended petition. The court entered an order dismissing the plaintiff's action. From this order the plaintiff appealed.

The material allegations of the plaintiff's amended petition may be summarized as follows: The plaintiff is a corporation duly organized and existing by virtue of the laws of the State of Nebraska, with its principal place of business at Crete, Nebraska; that on or about February 14, 1953, the defendants, Charles A. Nelson and Hattie Nelson, husband and wife, for a valuable consideration made, executed, and delivered to the plaintiff a promissory note in the amount of $5,200, a true copy of which is attached to the petition and made a part thereof; that said note is on a printed form used by the plaintiff in connection with its installment loan business under sections 45-114 to 45-155, R. R. S. 1943; that originally it was attached to the chattel mortgage which is attached to the petition and made a part thereof; that at the time the defendants executed said note and chattel mortgage it was agreed by and between the parties that the loan should bear interest at the rate of 6 percent per annum, and the chattel mortgage was altered to carry out that agreement; and that the promissory note provided for the repayment of said loan of $5,200 in 24 equal installments of $221.33 each, the first installment being due March 14, 1953, and the final in-

stallment being due February 14, 1955.

The plaintiff further alleged that the agreed and proper rate of interest was 6 percent per annum on the unpaid balance of the principal amount of said loan, and 9 percent per annum upon the balances that were due and delinquent; that on February 14, 1953, defendants made, executed, and delivered to the plaintiff a chattel mortgage as security for the promissory note pledging one 1½-ton Dodge truck and a milk route known as "Roberts Dairy No. 5100" which mortgage was duly' recorded in the proper office on December 23, 1954; that under the terms of the said note and mortgage there was due and payable on the 14th day of March 1953, $221.33, and a like amount was due and payable each 14th day of the months succeeding March 14, 1953, to and including February 14, 1955; that the defendants had failed, neglected, and refused to pay the amount due on said mortgage; that the balance after all credits were allowed, was $5,192.31; that under the terms of the said chattel mortgage the plaintiff elected to declare the full amount of the said note and mortgage and interest due and payable at once; and that the plaintiff was the owner and holder of the mortgage and the debt secured thereby and was entitled to foreclose the same for the satisfaction of the debt. The prayer was in the usual and proper form.

The assignments of error made by the plaintiff which are pertinent to a determination of this appeal may be stated as follows: (1) The trial court erred in sustaining the demurrer filed by the defendants and entering judgment in their favor; (2) the court erred in finding the loan contract to be usurious or tainted with usury; (3) the court erred in the interpretation given the installment loan law and in particular section 45-138, R. R. S. 1943; and (4) the court erred in finding said loan contract void under section 45-138, R. R. S. 1943.

The function of a general demurrer to an amended

petition is as follows. In Gottula v. Standard Reliance Ins. Co., *ante* p. 1, 84 N. W. 2d 179, this court said: "A general demurrer admits all the allegations of fact in the pleading to which it is addressed, which are issuable, relevant, and material, and which are well pleaded; but does not admit the conclusions of the pleader, except when they are supported by, and necessarily result from, the facts stated in the pleading. It does not admit inferences of the pleader from the facts alleged, nor mere expressions of opinion, nor theories of the pleader, as to the effect of the facts, nor allegations of what will happen in the future, nor arguments, nor allegations contrary to the facts of which judicial notice is taken, or which are contrary to law." See, also, Brunson v. Ranks Army Store, 161 Neb. 519, 73 N. W. 2d 803; Richter v. City of Lincoln, 136 Neb. 289, 285 N. W. 593.

In passing on a demurrer to a petition, the court must consider the exhibits attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant. Gottula v. Standard Reliance Ins. Co., *supra;* Buller v. City of Omaha, 164 Neb. 435, 82 N. W. 2d 578; Cacek v. Munson, 160 Neb. 187, 69 N. W. 2d 692.

With the foregoing in mind we examine the plaintiff's amended petition with exhibits, true copies of the promissory note and chattel mortgage, attached thereto and made a part thereof, to determine whether or not the trial court erred in sustaining the defendants' demurrer to the plaintiff's amended petition as contended for by the plaintiff.

The note is designated a negotiable note. It is dated February 14, 1953, and is in the amount of $5,200. It recites in part: "FOR VALUE RECEIVED, the undersigned * * * promise to pay to the order of A-1 FINANCE COMPANY INC (Licensee), * * * the principal sum of _ _ Fifty Two Hundred and no/100 _ _ _ Dollars, together

with charges thereon, from the date hereof, until fully paid, at the rate of 3% per month on that part of the unpaid principal balance not in excess of $150.00 and 2½% per month on that part of the unpaid principal balance in excess of $150.00 and not in excess of $300.00 and ¾ of 1% per month on any remainder of such unpaid principal balance, which aggregate amount shall be payable in installments as follows: $221.33 on the 14th day of March, 1953, and a like amount on the 14th day of each succeeding month thereafter, and a final installment of the unpaid principal balance and unpaid charges on Febr. 14, 1955. * * * The lender hereunder is licensed under the laws of the State of Nebraska and the construction, validity and effect of this Note shall be governed by the laws of the State of Nebraska. * * * This Note is secured by ———————————— Signature Charles A. Nelson Address Crete, Nebr. Signature Hattie Nelson Address Crete, Nebr."

The chattel mortgage is dated February 14, 1953. At the top of this instrument appears the following: "6% annually." This, standing alone, is meaningless. It is apparently no part of the mortgage. Then the mortgage shows it is made for the principal sum of $5,200 and the charges as stated therein are in accord with one certain promissory note of even date. The mortgage then pledges a 1½-ton Dodge truck and milk route, Roberts Dairy No. 5100. Later in the mortgage reference is made again to the promissory note, and the rate of charges as stated in the promissory note is the same as in the chattel mortgage except that the figures "¾ of 1%" have been circled in pencil with an arrow leading therefrom and pointing to the penciled insertion of the words and figures "6% annually—9% on unpaid due balances."

The plaintiff in the instant case is licensed under the installment loan law, sections 45-114 to 45-158, R. R. S. 1943. The design of this law is to license and control the business of making installment loans and to re-

strict the enforcement of collection of illegal loans once they have been made. Primarily the design, as is apparent, was that the law should have application to the duties and obligations of licensees and the rights and liabilities of those obtaining loans from licensees. See Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122. See, also, Mack Investment Co. v. Dominy, 140 Neb. 709, 1 N. W. 2d 295.

The pertinent section of the statutes here involved is section 45-138, R. R. S. 1943, which relates to installment loans, and loans in excess of one thousand dollars. It provides in part: "No licensee shall directly or indirectly charge, contract for or receive a greater rate of interest than nine per cent per annum upon any loan, or upon any part or all of any aggregate indebtedness of the same person, in excess of one thousand dollars." Certain restrictions and limitations appear in said section as follows: "No licensee shall enter into any contract of loan under sections 45-114 to 45-155, under which the borrower agrees to make any payment of principal more than twenty-one calendar months from the date of making such contract, if such contract is not secured by a bona fide duly recorded mortgage on real estate owned by the borrower, or under which the borrower agrees to make payment of principal more than thirty-six calendar months from the date of making such contract, if the contract of loan is secured by a bona fide duly recorded mortgage on real estate owned by the borrower. Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is substantially greater in amount than any preceding installment. When necessary in order to facilitate payment in accordance with the debtor's principal source of income, such a debtor whose principal source of income is from agriculture, stock raising or school teaching, the payment schedule may reduce or

omit installment payments, if at least one half of the credit is to be repaid within the first half of the applicable maximum maturity and if the other payments are increased in such manner that they will be substantially equal or declining in amount and sufficient in the aggregate to retire the loan in the period of twenty-one months or thirty-six months, as hereinabove in this paragraph provided for. Any contract of loan made in violation of this paragraph, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest or charges on such loan."

The demurrer admits the contents of the promissory note and chattel mortgage which include the terms, conditions, and interest charges as set forth therein.

There is apparently a conflict to some extent in the promissory note and the mortgage. In this regard the following is applicable.

In Interstate Finance Corp. v. Brink, 232 Iowa 733, 6 N. W. 2d 120, 143 A. L. R. 587, it is held that where there is a conflict between a note and mortgage given to secure it, the former must prevail.

The note is the principal or primary contract or obligation. The mortgage is an incident. In case of conflict, the terms of the note prevail. See Wilson v. Tolles, 210 Iowa 1218, 229 N. W. 724. This doctrine is said to be the general holding. See, also, Smith v. Kerr, 130 Me. 433, 157 A. 314, which cites many supporting authorities to the above effect.

The plaintiff's petition pleads a contemporaneous oral agreement to the effect that the loan of $5,200 payable in 24 monthly installments was to bear interest at the rate of 6 percent per annum. The demurrer does not admit allegations that are irrelevant, immaterial, incompetent, or that are contrary to law. This allegation in the plaintiff's amended petition constitutes an attempt to vary the terms of a written instrument by al-

leging a contemporaneous oral agreement. The oral agreement alleged in the plaintiff's amended petition is an entirely different agreement than that contained in the promissory note and the chattel mortgage.

As stated in 12 Am. Jur., Contracts, § 233, p. 757: "As already intimated, preliminary negotiations cannot be allowed to contradict or vary the terms of the written contract. No parol agreement prior to, or contemporaneous with, a written contract, which tends to vary or contradict either its express provisions or its legal import thereto, can be considered in interpreting it. A parol agreement inconsistent with a written agreement made contemporary therewith is void. Parol understandings, although they induce the making of a written contract, are merged in the writing so that they cannot be used to change the contract or show any intent different from that expressed in the instrument."

And as stated in Perry v. Gross, 155 Neb. 662, 53 N. W. 2d 73: "Also the parol evidence rule is not merely one of evidence. It is one of substantive law as well. As a rule of substantive law it renders ineffective proof of an oral prior or contemporaneous agreement the effect of which would be to vary, alter, or contradict the terms of a written agreement." See, also, Theno v. National Assurance Corp., 133 Neb. 618, 276 N. W. 375; Arman v. Structiform Engineering Co., Inc., 147 Neb. 658, 24 N. W. 2d 723.

It is apparent that the allegation as to the oral contract discloses that it is not a distinct oral agreement as to some collateral matter, nor an agreement as to a condition on which the performance of the written contract is to depend, which are the recognized exceptions to the parol evidence rule. This allegation is without merit.

This court has passed upon the very same question involved in this appeal, that is, where a loan in excess of $1,000 provides for a rate of interest in excess of 9 percent per annum, such a loan is void whether or not the lender is licensed under the installment loan law. In

Powell v. Edwards, *supra*, this court held: "Any loan made by a licensee under the installment loan law in excess of $1,000 wherein an interest rate in excess of 9 percent per annum is contracted for is void and the licensee shall have no right to collect or receive any principal or collect any interest on such loan." See, also, State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1; McNish v. Grand Island Finance Co., 164 Neb. 543, 83 N. W. 2d 13.

The district court in rendering its decision sustaining the demurrer did not state as a reason for the decision the excessive charges as shown by the contract. This court is not limited to the reasons given by the lower court in entering its order.

"A judgment rendered by the district court which is free from error is not rendered invalid by the fact that the court gave an incorrect reason therefor." Powell v. Edwards, *supra*. See, also, Longnecker v. Longnecker, 90 Neb. 784, 134 N. W. 926; Bastian v. Weber, 150 Neb. 709, 35 N. W. 2d 791; Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478.

We might add that the trial court did give a correct reason, other than those here considered, for sustaining the demurrer which will be discussed later in the opinion.

We conclude, for the reasons heretofore set forth, that the trial court did not err in sustaining the defendants' demurrer to the plaintiff's amended petition.

There is another reason why the demurrer should be sustained, and that is that the loan is invalid for the reason that it violated section 45-138, R. R. S. 1943, as hereinafter shown. We repeat a part of the section: "Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is substantially greater in amount than any preceding installment."

The payments of $221.33 monthly provided for in the contract will not retire the loan in 23 payments, so a twenty-fourth payment is provided for in the contract, this being the final installment of the unpaid principal balance and unpaid charges which accrue at the end of the twenty-fourth month. It is apparent that the final installment or payment will be substantially greater than the preceding payments. This constitutes a violation of section 45-138, R. R. S. 1943, and renders the loan void. See State ex rel. Beck v. Associates Discount Corp., *supra.*

The trial court based its decision and held the loan in question to be void for the reason that it called for 24 monthly installment payments in violation of section 45-138, R. R. S. 1943. We have heretofore set out the pertinent provisions of this section. It does provide the maximum charges which may be made on a loan in excess of $1,000, limits the term of the loan specifically to 21 months, and further provides that any contract made in violation of this limitation as shown in said section shall be void. It is evident that the Legislature has determined that the public policy of the state does not permit a licensee, such as in the instant case, to make an installment loan which is not to be performed within 21 months of the date of the making of the loan, or where the loan is not made repayable in approximately equal installments. The courts will not interfere with the public policy thus pronounced by the Legislature.

In considering the statute before us we are required to observe the rule that the policy or impolicy of the statutory provision is the exclusive function of the Legislature and not of the courts. We must accept the statute as we find it and no requirement which is not in the statute will be or can be considered to govern our action. The general rule is that where the language of the statute is unambiguous there is no necessity for construction and courts cannot change the clear language of the statute. See State ex rel. Herman v. City of

'Grand Island, 145 Neb. 150, 15 N. W. 2d 341. See, also, Cross v. Theobald, 135 Neb. 199, 280 N. W. 841; Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409.

As stated in Armstrong v. Board of Supervisors, 153 Neb. 858, 46 N. W. 2d 602: "If the language of a statute is clear and unambiguous, courts will not by interpretation or construction usurp the function of the lawmaking body and give it a meaning not intended or expressed by the Legislature."

For the reasons given herein we conclude that the trial court did not err in sustaining the demurrer of the defendants to the plaintiff's amended petition and dismissing plaintiff's action.

AFFIRMED.

SIMMONS, C. J., participating on briefs.