## MATSON v. FEDERAL FARM MORT-GAGE CORPORATION et al.

### No. 2312.

Court of Civil Appeals of Texas. Waco.

May 22, 1941.

Fitzpatrick & Dunnam, of Waco, and Robert F. Cherry, of Clifton, for appellant.

H. A. Berry and Carl Runge, both of Houston, for appellees.

RICE, Chief Justice.

This suit was brought in the district court of Bosque county by Thomas C.

Matson, as plaintiff, against Federal Farm Mortgage Corporation, hereinafter called the Corporation, Julius M. Jenson and A. C. Williams, as defendants, for damages alleged to have been suffered by plaintiff resulting from the wrongful sale and conversion by defendants of plaintiff's land, situate in Bosque county. Trial was had to a jury and judgment was rendered by the trial court non obstante veredicto that plaintiff take nothing against either of the defendants; from which judgment plaintiff has perfected his appeal to this court.

Under the undisputed facts in evidence, it appears that plaintiff acquired title to 3 tracts of land, totaling 487½ acres, on March 16, 1935, by deed from Gustafson and wife, reciting a cash consideration and the assumption by Matson of a note for the principal sum of $4,200, payable to the Federal Land Bank of Houston. Gustafson testified that no cash was in fact paid him by Matson. Matson did not testify. The above mentioned note was in fact executed by Gustafson and wife to the Land Bank Commissioner and secured by a deed of trust lien on the above mentioned land, naming A. C. Williams as trustee. The note and lien were the property of the defendant Corporation at the time plaintiff's alleged cause of action arose.

On July 6, 1936, Matson filed his petition in bankruptcy, praying for a composition and extension of his debts under Section 75 of the National Bankruptcy Act, 11 U.S.C.A. § 203; and in his schedules thereto attached and sworn to by him, listed the above tract of land among his assets as of the value of $4,500. It was agreed at the trial that Matson was indebted on said note in the sum of $5,192.70 to the Corporation as of the date of the sale of the land in question by the trustee named in said deed of trust. Matson's petition in bankruptcy was referred by the United States District Court to the Conciliation Commissioner of Bosque county, to take such proceedings as were required by Section 75 of said Bankruptcy Act. The Corporation duly filed its claim with the Commissioner. No agreement of composition or extension having been reached, Matson, in October, 1936, filed his amended petition, praying to be adjudged a bankrupt, and was in November following so adjudged, as provided by Section 75 of said Act, and the matter was referred again to the Conciliation Commissioner of Bosque county as Referee for further proceedings in accordance with said Section 75.

In August, 1938, said Conciliation Commissioner appointed appraisers, who made and returned their report, valuing the land in controversy at the sum of $3,900. This report was approved by said Commissioner on September 12, 1938. The Corporation then filed with the Commissioner its motion praying that the property of the estate of Matson on which it had a lien be declared burdensome to said estate, and that the Corporation be granted permission to go forward with the enforcement of its lien at such time and in such manner as it might elect. On September 12, 1938, the Commissioner entered his order as follows:

"On this the 12th day of September, A. D. 1938, came on to be considered the motion of the Federal Farm Mortgage Corporation, seeking permission to go forward with the enforcement of its lien at such time and in such manner as it may elect. And it appearing that an appraisement has been made of the debtor's property covered by said lien, and that said appraisement showed the value of the property to be less than the liens against the same. Therefore, the motion of the Federal Farm Mortgage Corporation to declare said property burdensome to the estate of debtor is well taken and should be sustained. It is my finding that the property of the debtor upon which the Federal Farm Mortgage Corporation holds a lien is burdensome to the estate of the debtor.

"It is, therefore, ordered, adjudged and decreed that the property of the debtor upon which the Federal Farm Mortgage Corporation holds a lien be declared burdensome to the estate of the debtor, and the same should be and is discharged from these proceedings, and said corporation is given permission to go forward with the enforcement of its lien at such time and in such manner as it may elect freed of the jurisdiction of this court, upon the payment of $35.00 Referee's fees, which shall constitute a lien against said property. The charge of $35.00 Referee's fees is made against said property for the reason that the same constitutes debtor's entire estate."

On September 21, 1938, Matson filed with the Commissioner a motion praying for a rehearing and re-appraisal, setting up, among other things, as ground therefor,

that one of the appraisers was an interested creditor of said estate. This motion was set for hearing before the Commissioner on October 21, 1938. The Corporation was given notice of this hearing, and thereafter, and at the request of the attorney for the Corporation, the Commissioner postponed the hearing, without setting another date therefor or notifying Matson of the postponement. Thereafter, the Corporation, without asking for a hearing on said motion and without a hearing thereon, requested the trustee named in said deed of trust to sell the land here involved under the terms of said deed of trust. The trustee,. A. C. Williams, a defendant herein, through his attorney in fact, Julius M. Jenson, also a defendant, thereupon posted notices advertising the land in controversy for sale, and sold the same on December 6, 1938. At this sale the Corporation became the purchaser of the land and was delivered a trustee's deed thereto. Thereafter, on May 1, 1939, defendant Corporation conveyed said land to John S. Horner for the sum of $4,875.

Plaintiff contends that the trustee's sale was void because: (1) the trustee's notice of such sale was not posted at the courthouse door of Bosque county, or in view thereof, as required by law and by the terms of the deed of trust; and (2) defendant Corporation, by its transaction with the Commissioner in requesting postponement of the hearing on Matson's motion for rehearing on the go-forward order, and by thereafter remaining silent, waived any right it ever had to sell the property in controversy at the time same was sold.

The defendants timely filed their motion for an instructed verdict, and the same was overruled by the court.

The case was submitted to the jury on three special issues, which, with the answers thereto, are as follows:

"(1) What do you find from a preponderance of the evidence was the reasonable market value per acre of the land involved in this suit on or about December 6, 1938? Answer: $11.00.

"(2) Do you find from a preponderance of the evidence that the defendant, Federal Farm Mortgage Corporation, voluntarily appeared before H. J. Cureton, Jr., Conciliation Commissioner, and requested permission of the said Conciliation Commissioner to proceed to sell the land involved in this suit? Answer: Yes.

"(3) Do you find from a preponderance of the evidence that consideration of plaintiff's motion pending before said Commissioner for rehearing on October 21, 1938, was postponed at the request of the defendant, Federal Farm Mortgage Corporation, through its agent, J. R. Murray? Answer: Yes."

On motion of the defendants, the court rendered judgment, non obstante veredicto, that plaintiff take nothing by his suit; the costs were taxed against plaintiff.

Plaintiff assigns error to the action of the court in thus rendering judgment against him because, he says, the sale of his land by the trustee was void for the reason that it appears from the undisputed facts that notice of such sale was not posted, as required by said deed of trust and the law, at the courthouse door of Bosque county; that the Corporation purchased said land at said void trustee's sale and thereafter sold the same to an innocent purchaser for value, thereby putting the same beyond the reach of plaintiff and rendering itself liable to plaintiff as for conversion. He contends that it having been stipulated that Matson's debt to the Corporation was the sum of $5,192.70, and the jury having found that the value of the land in controversy was $11 per acre, or the total sum of $5,362.50, he was entitled to judgment against the defendants for the sum of $169.80, being the difference between the amount of his debt and the value of the land as found by the jury.

In support of his contention, plaintiff cites Article 3810, Revised Civil Statutes, which, in reference to sales of land under deeds of trust, provides that "notice of such proposed sale shall be given by posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county or counties, one of which shall be made at the courthouse door of the county in which such sale is to be made." Plaintiff concedes that a literal compliance with the terms of said article is not necessary; that if the notice in question had been posted "at" or "near" or "in proximity to" the courthouse door, and in view thereof, there would have been such a substantial compliance with the law as to render the trustee's sale valid in this respect. However, he contends that the notice of such trustee's sale is shown by the undisputed evidence not to have been

posted, as required by law, "at" or "near" or "in proximity to" and in view of the courthouse door, and therefore the purported deed from the trustee to the Corporation was void.

The undisputed evidence shows that the notices of the trustee's sale were timely posted in three public places in Bosque county, one of which was on the bulletin board in the county courthouse of Bosque county, and that such bulletin board was the place provided at the time for the posting of legal notices in said county. This bulletin board was in a corridor on the first floor of the courthouse. A sketch of the floor plan of the first floor of the courthouse was made by one of the witnesses during the trial, introduced in evidence, and is here reproduced:

On the foregoing plat, the letter "c" is for corridor and the letter "d" is for door. It will be noted from such sketch that a corridor bisects the first floor of the courthouse from north to south, having an outside entrance into the courthouse at each end of said corridor; that from this corridor another leads to the west, ending in a door that leads into the County Superintendent's office; that there is another corridor on the east side of the north and south corridor, leading from the last mentioned corridor to an entrance door to the courthouse near its northeast corner. In other words, the courthouse has three outside entrances, one on the south, one on the north and one on the east; there being no outside entrance from the west to the corridor running east and west.

In the above sketch the word "board" shows the location of the bulletin board at the time the sale in question was made. The bulletin board was in the corridor running west from the north and south corridor, and was on the north wall of said corridor; it was north of and across said corridor from the County Clerk's office, and was west of and across the north and south corridor from the Commissioners court-room. It was on or against the outside of the south wall of the Tax Collector's office, between the door entering same from the south and the southeast corner of said office. This board did not have the words "bulletin board" written thereon; was estimated by the witnesses to be from 15 ft. to 17 ft. in length, from 3 to 3½ ft. in width, and was placed approximately 3 ft. above the floor. It could not have been seen by a person standing in either the north or east doors of the courthouse. If a person opened the south door of the courthouse back as far as he could and leaned against the wall, he could look through the grillwork of the stairway and see a small portion of this board; but if a person opened the south outside door, as one would ordinarily do, he could not see it or anything on it. There were no outside windows through which light could be reflected into the corridor in which this bulletin-board was situate, and on dark days and without artificial light, the notices on this board could not be read. The witnesses testified that the lights in this corridor were usually kept burning. A person taking two steps on the inside of the south door of the courthouse could see papers tacked on the east end of the bulletin-board. The entire bulletin-board could be seen by a person, over a space of two or three steps, in the vicinity of the County Judge's office. The board could not be seen at a point at or near the entrance of the Sheriff's office, nor by a person entering, by the usual place of entrance, either the County Clerk's office or the Tax Collector's office. The door leading out of the corridor in which the bulletin-board was placed into the County Superintendent's office, and the door leading from said corridor into the County Clerk's office were usually kept closed, except in the summertime. This board had been the usual place for three or four years for the posting of legal notices. There was no other place in the courthouse provided for posting notices at that time, and that was the place where all legal notices were posted. It was testified that this board was situate some 25 to 40 ft. from the nearest outside door of the courthouse. It was testified by a witness that Matson knew that the notice of sale of his land was posted. This testimony was not denied by Matson, who did not take the witness stand.

■ We overrule these assignments of error. In our opinion, "at the courthouse door," as used by the legislature in Article 3810, was intended to mean near or in the proximity of the courthouse door. We are of the opinion that the facts of this case show a substantial compliance with the provisions of said article. We are further of the opinion that the parties to the deed of trust, by the use of the term "at the courthouse door," intended and contemplated that the notice therein required to be posted at the courthouse door should be posted at the place provided for posting legal notices in the courthouse of Bosque county, "such being the place where a poster would most likely be seen by persons desirous of purchasing land at public sale." Howard v. Fulton, 79 Tex. 231, 14 S.W. 1061, 1062. In the above mentioned case, the legality of the trustee's sale was attacked for the same reason here assigned. The agreed facts in that case were that two printed copies of the notice of sale were posted on the boards in the corridor of the courthouse in the city of Austin, such notices being about 10 inches in length and 2 inches in breadth, and that said boards on which the notices were posted were in the corridor of the courthouse about 40 ft. from the front door, in open view of the door, and just at the side of a stairway leading to the courtrooms in the second story; that these boards were placed and provided by Travis county for the posting of notices of sheriff's sales, tax sales and probate matters and all public notices required by law to be posted at the courthouse door; that such boards had been provided and used for such purposes, standing in the same place, for many years, and notices of trustee's sales had customarily been posted on these boards.

■ Plaintiff assigns error to the trial court's refusal to submit to the jury appellant's requested special issue No. 1, as follows: "Do you find from a preponderance of the evidence that notice of sale of plaintiff's land was not posted at the courthouse door of Bosque county for

three weeks prior to the date of sale on December 6, 1938?" and contends that said issue was a material issue, raised by the pleadings and supported by the evidence. We overrule this assignment. The facts in this case as to the location of the bulletin-board in the courthouse of Bosque county being undisputed, it then became a question of law for the court to determine as to whether such notice was posted "at the courthouse door," as required by the deed of trust and by Article 3810, Revised Statutes.

Plaintiff contends that the court erred in rendering judgment against him because the undisputed evidence showed that the Corporation waived any right it had to make sale of plaintiff's land under the deed of trust at said time, because the Conciliation Commissioner had jurisdiction at such time of the sale of said land; and because, as shown by the evidence and found by the jury, the Corporation, immediately prior to said sale, voluntarily appeared before such Commissioner and invoked the exercise of his powers by requesting his permission to proceed to sell the land involved in the suit; and, as shown by the evidence and found by the jury, said Corporation, through its agent and attorney, requested a continuance of plaintiff's motion for rehearing on said issue, which motion for rehearing was pending and not disposed of on December 6, 1938, the date that the defendant Corporation sold the land in controversy under the deed of trust.

We overrule this assignment. The undisputed evidence shows that the Commissioner, on September 21, 1938, entered an order finding that the tract of land in question was burdensome to the estate of the debtor and permitting the Corporation to go forward and make sale of its security at such time and in such manner as it might elect. Thereafter Matson filed with the Commissioner a motion for rehearing, which was by the Commissioner set for hearing on October 21, 1938. At the request of the attorney for the Corporation, the date of this hearing was postponed by the Commissioner and no date was thereafter set for a hearing on this motion. There is no evidence that Matson made any attempt after this postponement to have his motion for rehearing heard. The Conciliation Commissioner, a witness for the plaintiff, testified that the attorney for the Corporation,

in the conversation about postponing the hearing on Matson's motion for rehearing, requested him to set a date at his, the Commissioner's, convenience or at some other date, and advise him; that it was not by virtue of any act of said attorney that the Commissioner did not set the motion down for hearing on another date; that it was just a routine matter he had not gotten around to.

There was no evidence that an appeal was taken by Matson from the go-forward order entered by the Commissioner, nor that any motion was filed with or request made of the Commissioner that a stay order or restraining order be issued staying or restraining the sale under the deed of trust. It does not appear that any stay order or restraining order was in fact issued, although the Commissioner testified that prior to the trustee's sale both he and Matson knew that the land was posted for sale. Matson did not take the witness stand and there was no evidence that he was misled, lulled to security or deceived by any act of the defendant.

The record shows that on the 15th day of March, 1939, the Corporation filed in the District Court of the United States, Waco Division, its motion that it and the property covered by its lien be discharged from the bankruptcy proceedings therein filed by Matson; setting out in said motion that the Commissioner, acting as Referee, issued his order on the 12th day of September, 1938, discharging the land in controversy from the proceedings on the ground that it was burdensome; that the Commissioner advised the Corporation that the debtor had objected to the appraisement, but that it was his intention to overrule the objection; that thereafter the Corporation had the property advertised under the power of sale and deed of trust and sold on the 6th day of December, 1938, at which sale it became the purchaser; that at the time of the sale no stay order was issued by said court and no application for a restraining order or stay order had been made to said court, and that such application for stay or restraining order and actual issuance thereof by the court were necessary before the sale was made or the sale of the property could not thereafter be questioned by the bankrupt. To this motion Matson filed his answer in said court on the 18th day of March, 1939, wherein he set forth that after the go-forward order was issued by

the Commissioner, he filed his application for rehearing, and that a hearing on said motion was set down and the Corporation notified thereof, but that it, in disregard of the motion and of the action of the Commissioner in setting the same down for hearing, in violation of the agreement of the Corporation with the Commissioner as to the hearing, and without the sanction of the Commissioner, illegally advertised plaintiff's property for sale and sold the same at a time when the plaintiff's property was under the administration of the United States District Court. He prayed that in event the motion of the Corporation be granted, that the court's judgment should find that the trustee's sale of plaintiff's land by the Corporation was made illegally, in violation of the order of the Commissioner and in violation of the Corporation's agreement with the Commissioner. On the 18th day of March, 1939, after a hearing on said motion, the judge of said court rendered judgment finding that the property covered by the Corporation's lien should be stricken from the schedules in bankruptcy, on the ground that said property would not rehabilitate the bankrupt, the income therefrom being insufficient to meet the interest, carrying charge and taxes annually accruing against said property, and decreeing that said property "is hereby stricken from the schedules of the debtor."

We do not feel that this evidence is sufficient to justify us to hold as a matter of law that the Corporation waived its right to sell plaintiff's land under the deed of trust on December 6, 1938.

All of plaintiff's assignments are overruled and the judgment of the trial court is affirmed.