JOHN J. KNOUSE, APPELLEE, V. BEN F. KNOUSE ET AL.,
APPELLEES, J. R. SWENSON, INTERVENER-APPELLANT.

61 N. W. 2d 388

Filed December 11, 1953.   No. 33392.

*Swenson, Viren & Turner* and *C. G. Claesson Uggla,*
for intervener-appellant.

*W. L. Brennan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a partition suit. The property involved is 320 acres of farm land in Boyd County, Nebraska, hereinafter referred to as the Knouse land. The referee reported that the land could not be divided in kind to make a proper apportionment of shares to the respective parties, and recommended sale of the same. The report of the referee was approved by the trial court and the referee was ordered to sell the property at public sale. On March 9, 1953, the sale was had, and J. R. Swenson was the highest bidder at the sale. He bid the amount of $22,300 for the land. On March 17, 1953, Robert Dean Classen made an increased bid of $500 which was deposited with the referee as an upset bid. On March 20, 1953, the highest bidder at the sale moved for confirmation of the sale. On the same day John J. Knouse, plaintiff herein, moved the trial court to set aside and vacate the sale, and filed objections to the confirmation on the grounds that the property did not sell for its reasonable market value; that it was of the reasonable worth and actual value of $28,000, being a 320-acre combination grain and stock farm with a good set of improvements, with 220 acres of farm land with very good classification as to productivity. The trial court, on the same day, held a hearing upon the report of the referee, the motion of the highest bidder at the sale to confirm the sale, and the motion of the plaintiff and his objections to the confirmation of the sale. The plaintiff and J. R. Swenson both adduced evidence at the hearing. The court entered a finding that at the sale the property did not sell for its fair and reasonable value under the circumstances and conditions of the sale, and that the sale should be set aside and reopened in court to permit further bidding. The trial court set aside the sale of the referee, offered the land for sale in open court, and sold the same to Robert Dean Classen for the sum of $23,500, or $1,200 more than the highest bidder offered at the sale. The highest bidder was pres-

ent and stated that he would not offer more nor raise his bid. The court further found that the sale had been conducted in all respects according to law; that the property sold for its fair and reasonable value under the circumstances and conditions of the sale; and that a subsequent sale would not realize a greater amount. The court approved and confirmed the sale in Robert Dean Classen. J. R. Swenson then moved to set aside the sale of the property to Robert Dean Classen, which motion was overruled. From the order setting aside the sale and reselling the property, J. R. Swenson appealed.

The issue tried in the district court was the reasonableness of the price realized at the referee's sale.

The record discloses that Robert Dean Classen testified that he was familiar with the land involved in the sale, was a bidder at the sale, and at the present time would increase his offer to $23,500. He was desirous of purchasing the land. He made next to the highest bid at the sale and could make no further offer at that time due to financial circumstances which he subsequently was able to manage to permit him to offer the amount testified to by him. He opened the bidding of the sale at $16,000. His last bid at the sale was $22,200. He had read about the sale, it having been advertised in a newspaper about a month prior to the time it occurred. He had lived in the neighborhood of the Knouse farm for 25 years and had been over the land, there being just a section line between his land and the land here involved. He gave a detailed description of the house on the premises, stating that it was a large house. He described the improvements and the condition of the same, and stated that there was plenty of water on the premises, that the soil was heavy with no sand, and that the pasture was excellent.

Louis Klasna, engaged in the insurance and real estate business in Spencer, Nebraska, testified that 10 or 12 sales of land had been made in Boyd County in the 18-month period prior to the time of this sale. He par-

ticipated in 50 percent or more of these sales. He further testified that he was familiar with the Reo property just west of Spencer, consisting of 680 acres, 325 acres of which were crop land and the balance in pasture, located on the hard-top road, with very good improvements, except the house was not as big as that on the Knouse land; and that this property did not sell for over $73 an acre. In addition, he sold a quarter section of land that was owned by his brother for $12,000, which land compared favorably with the Knouse land. Generally, a quarter section of land would sell to better advantage than a half section. He also sold the Ivan Johnson quarter section of land northwest of Spencer that was not quite as good in productivity in comparison with the Knouse land but the bushel yield was about the same. This farm sold for $10,000. He also sold his parents' homestead consisting of 480 acres of land, 120 acres of which was good farm land, 20 acres of fair land in the hills, and the productivity of the 120 acres was about the same as the Knouse land. This sale averaged about $52.50 an acre. He was also involved in the sale of the Velder half section on the highway south of Spencer which consisted of 100 acres of brome and alfalfa. The balance was pasture. It sold for $9,300. He was involved in the sale of the Manholder land consisting of 400 acres, 95 acres of which was under cultivation and the rest was pasture. The crop land was about the same as the Knouse land. The pasture was quite rough. It sold for $16,000. He was also involved in the sale of the Swan P. Johnson land consisting of 240 acres north of Spencer which was sold at public auction about 2 years previous to the sale of the land in question. One hundred and sixty acres of this land was under cultivation, and it sold at about $65 an acre. Eighty acres of this land was more productive than the Knouse land, a quarter section was not quite so good, but the overall productivity was about the same. The improvements were just as good or better

than those on the Knouse land, with the exception of the house which was small. He further testified that he was familiar with the soil on the Knouse land by going on the land and looking at it; that this land was situated on a dirt road; and that the south quarter section was better than the north quarter section, the latter being on higher ground and having more sandy loam. He believed that there was 190 acres of good land under cultivation. He understood the price offered for the land to be $22,300, and that was within the range of figures that he would consider a reasonable price at that time. He also testified that the trend of prices for farm land had gone down in the last 6 months due primarily to the decline in the price of farm products and cattle. He was also familiar with the Jenson farm located 2 or 3 miles from the Knouse land, which sold for $100 an acre, and the Lundquist land 3 or 4 miles from the Knouse land which sold for $19,600, or $122 to $123 an acre. This land, in productivity, was somewhat analogous to the Knouse land. In addition, he was familiar with the Patton half section, the south quarter of which was sandier than the Knouse land. The Knouse land was much better than the Patton place, which sold for $28,500. He further testified that these lands were sold to neighbors desirous of purchasing them, and who were wealthy persons. He considered such sales special sales, rather than the usual kind of sales. He further testified that no particular yardstick could be used in determining the price of farm land, it depended upon the neighbors, the location, and other matters, and the desire of the purchaser to purchase it. There was also some testimony in comparison of these lands with the Knouse land. Some of the land that this witness testified about was located in the brakes of the Missouri River or one of its tributaries. He would place the value of the Knouse land at $70 to $75 an acre.

The referee testified to the sale being advertised;

that he had a few inquiries about it; and that the sale was attended by 50 to 75 persons, and was open for an hour and 15 minutes.

The appellant predicated as error (1) that the trial court erred in refusing to confirm the referee's sale; (2) that the trial court erred in considering the upset bid filed by an unsuccessful bidder at the referee's sale in determining the reasonableness of that sale; and (3) that the trial court erred in allowing Robert Dean Classen to testify as to the amount he would be willing to pay for the property.

We have held that a successful bidder at a judicial sale becomes a party to the proceeding, may appear and urge confirmation, and may appeal from an order setting the sale aside. See, State ex rel. Sorensen v. Denton State Bank, 126 Neb. 486, 253 N. W. 670; Dawson County v. Whaley, 134 Neb. 509, 279 N. W. 164; Siekert v. Soester, 144 Neb. 321, 13 N. W. 2d 139, 152 A. L. R. 527; County of Nance v. Thomas, 146 Neb. 640, 20 N. W. 2d 925; County of Lancaster v. Schwarz, 152 Neb. 15, 39 N. W. 2d 921.

In Siekert v. Soester, *supra*, this court held: "Substantially increased offers to a referee for property sold by him, made before confirmation of the sale to the highest bidder, are sufficient evidence to support a finding of the trial court in the exercise of its judicial discretion that confirmation should be denied and a new sale ordered." The court set forth the three doctrines as to the effect of the receipt of a higher bid after property has been struck off at a judicial sale, and explained each of such doctrines, then went on to say: "* * * where there has been an advanced bid before confirmation, the entire matter of confirmation of judicial sales is left with the trial court, to be confirmed or not according to its judicial discretion. This doctrine is the one heretofore approved and adopted by this court. True, in several cases it has been held by this court that a judicial sale will not be set aside on account of mere

inadequacy of price, unless such inadequacy is so gross as to make it appear that it was the result of fraud or mistake, or to shock the conscience of the court. But in these cases there was no evidence that others were willing to pay more. See State ex rel. Sorensen v. Denton State Bank, supra."

Under the law, a referee in partition is an officer of the court (section 25-2180, R. R. S. 1943), subject to its lawful orders and directions, and every person who buys from a referee takes with knowledge that the contract of sale is not binding on the referee until the entire transaction is properly presented to and approved by the court. By analogy, from our own cases, in partition proceedings it is the duty of referees and trial courts to endeavor to secure the highest possible price for property sold for the benefit of those persons lawfully entitled to the proceeds of the sale. Therefore, substantially increased offers to a referee for property sold by him, made before confirmation of the sale to the highest bidder, are sufficient evidence to support a finding of the trial court in the exercise of its judicial discretion that confirmation should be denied and a new sale ordered. See, Siekert v. Soester, supra; State ex rel. Sorensen v. Denton State Bank, supra; State ex rel. Spillman v. American State Bank, 122 Neb. 42, 239 N. W. 214.

In Criswell v. Criswell, 230 Iowa 27, 300 N. W. 533, it was said that it was within the trial court's discretion, as long as such discretion was not arbitrarily exercised, to reject the highest bid at a public sale ordered in partition proceedings, and to reopen the sale for further offers for the property where subsequently to the sale a substantially higher bid was filed in court. The court has much discretion as to the method of sale, and there are no restrictions upon the means by which the court may determine the adequacy of the price. See, also, State ex rel. Sorensen v. Denton State Bank, supra; Crews v. Alberts, 124 Neb. 671, 247 N. W. 602.

In the case of First Nat. Bank v. First Trust Co., 145

Neb. 147, 15 N. W. 2d 386, a bid was made in open court in a partition action of $1,000 more than the property had sold for at public sale. A resale was ordered. Siekert v. Soester, *supra*, was cited.

As stated in Siekert v. Soester, *supra*: "* * * when all the parties were present in open court, the trial court could with judicial discretion have accepted such increased bid and then and there confirmed the sale. See State ex rel. Spillman v. American State Bank, supra."

In the instant case, under the authorities above cited, it becomes apparent that the trial court could and did accept the increased bid made by Robert Dean Classen, and by so doing he did not abuse his judicial discretion.

The appellant contends that the testimony of Robert Dean Classen as to the amount he would be willing to pay for the property as evidence of the unreasonableness of the price realized at the referee's sale was opinion testimony and was inadmissible without prior qualification of the witness. We believe the record to be sufficient to permit this witness to testify as to what he would be willing to offer for the Knouse land. It is apparent that he is a farmer, that he had been over the land, and that he had lived in close proximity to it.

Where persons are shown to be familiar with the value of a particular piece of land, they may be permitted to testify as to the value of such tract. Ordinarily, property owners who have lived for some time in the vicinity and know the property are qualified to testify to its value. Either lay or expert witnesses may be used if proper foundation is laid showing they have an acquaintance with the property and are informed as to the state of the market, the weight and credibility of their testimony being for the jury. In the instant case, the weight and credibility are for the court. See, Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328; 20 Am. Jur., Evidence, § 897, p. 754; DeVore v. Board of Equalization, 144 Neb. 351, 13

N. W. 2d 451; Annotation, 159 A. L. R. 11.

"A farmer, conversant with the land as to its situation, soil, advantages, etc., is competent as a witness to the value, as having particular knowledge of the facts in issue." Leroy & W. R. R. Co. v. Ross, 40 Kan. 598, 20 P. 197, 2 L. R. A. 217.

Farmers generally know the value of farm land, and may testify to its value where they know how such lands are valued in the vicinity. See, Himlar Coal Co. v. Kirk, 224 Ky. 383, 6 S. W. 2d 480; Saulsberry v. Kentucky & W. Va. Power Co., 226 Ky. 75, 10 S. W. 2d 451.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.

YEAGER, J., dissents.