IMOGENE MICHELSON ET AL., APPELLEES, IMPLEADED WITH ORA I. WAGNER, APPELLANT, V. CLARENCE B. WAGNER ET AL., APPELLEES.

101 N. W. 2d 498

Filed March 11, 1960. No. 34718.

*John E. Dougherty,* for appellant.

*R. E. Lunner* and *Gerald F. Beaver,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for York County. It involves a partition action. The question raised by the appeal is whether or not the trial court abused its discretion by ordering the referee appointed therein to make a public resale of the land being partitioned.

On May 19, 1959, the trial court rendered a decree in this action finding and confirming the interests of the several parties thereto in and to 360 acres of land located in York County, which is fully described therein; ordered partition to be made thereof accordingly; and appointed a referee for that purpose. The trial court's decree established the ownership of the land to be in 11 people, 9 of whom each owned a 1/10th interest while the other 2 owned a 1/20th interest. The referee reported that the real estate could not be advantageously divided into the requisite number of parcels with-

out great prejudice to the several owners thereof and recommended that it be sold. This report the trial court approved, ordering the real estate to be sold at public sale at the place therein specified, same to be for cash with a deposit of 15 percent of the bid to be made with the referee at time of the sale.

On June 22, 1959, the referee filed his report, saying that on June 19, 1959, he had sold the lands to Ora I. Wagner and Myrtle Wagner, husband and wife, for $48,000, and that the amount bid was the "highest bid obtainable." We shall hereinafter refer to Ora I. and Myrtle Wagner as the Wagners. Thereafter, on July 3, 1959, Cecil W. Wagner, an owner of a 1/10th interest in the land being partitioned, filed objections to the sale made by the referee being confirmed and requested a resale thereof on the ground "that the highest bid is unreasonable and insufficient; that a considerably higher bid has been submitted for said real estate." We shall hereinafter refer to Cecil W. Wagner as the objector. On the same day Henry C. Bjerrum filed an "Offer" with the clerk of the court of $49,000 for the 360 acres to which he attached his certified check in the sum of $5,145. The Wagners filed an answer to the objections. A hearing was had thereon and on July 15, 1959, the trial court found "that said offer of Henry C. Bjerrum is a substantial increase over the high bid at the sale; that a resale of said property will produce substantially more money for the owners of the property than the sale reported by the referee; that it is to the best interest of the owners of the property that the sale conducted by the referee be denied confirmation and that the property be resold at public auction with the $49,000.00 offer of Henry C. Bjerrum as the opening bid on the resale; * * * and that the Clerk of the Court should retain the certified check of Henry C. Bjerrum for $5,145.00 until further order of the court." Based on such findings the court, after sustaining the objections filed and refusing confirmation of the sale had, ordered the referee

to proceed to resell the real estate at public sale at the same place as before and upon the same terms, stating: "* * * with the opening bid to be the $49,000.00 offer of Henry C. Bjerrum." The Wagners filed a motion for new trial and have perfected this appeal from the over-ruling thereof.

"A successful bidder at a judicial sale becomes a party to the proceedings, may appear and urge confirmation, and appeal from an order setting the sale aside." Siekert v. Soester, 144 Neb. 321, 13 N. W. 2d 139, 152 A. L. R. 527. See, also, Knouse v. Knouse, 157 Neb. 748, 61 N. W. 2d 388; County of Lancaster v. Schwarz, 152 Neb. 15, 39 N. W. 2d 921.

"* * * every person who buys from a referee takes with knowledge that the contract of sale is not binding on the referee until the entire transaction is properly presented to and approved by the court." Siekert v. Soester, *supra*. See, also, Knouse v. Knouse, *supra;* County of Lancaster v. Schwarz, *supra.*

"In partition proceedings, it is the duty of referees and trial courts to endeavor to secure the highest possible price for property sold for the benefit of those persons lawfully entitled to the proceeds of the sale." Knouse v. Knouse, *supra*. See, also, Siekert v. Soester, *supra*.

"It is the general rule that confirmation of judicial sales rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of such discretion. The discretion to be exercised is not arbitrary, however, but should be one which is sound and equitable in view of all the circumstances. The court must act in the interest of fairness and prudence, and with a regard to the rights of all concerned, and the stability of judicial sales." 30A Am. Jur., Judicial Sales, § 122, p. 971. See, also, 50 C. J. S., Judicial Sales, § 52 c, p. 671, § 28 d (4), p. 617; 68 C. J. S., Partition, § 193 b, p. 318. As stated in County of Lancaster v. Schwarz, *supra*: "If the sale was fairly con-

ducted and the property sold for a reasonable and fair value under the circumstances, the court is ordinarily required in the exercise of its judicial discretion to confirm the sale. Inadequacy of price is not of itself sufficient to warrant a resale unless it appears that such resale would probably produce a higher price. Due regard must be given to the rights of the successful bidder and the stability of judicial sales generally." See, also, 30A Am. Jur., Judicial Sales, § 122, p. 971.

Apparently there were two contentions made by the objector in the district court as to why the sale made by the referee should not be confirmed and a resale ordered, although the first of these is not too well pleaded. The first is that, considering the bid received by the referee, the land did not sell for a sufficient amount in view of its fair and reasonable value. That such is a proper basis upon which a resale may be ordered is evidenced by our opinion in Knouse v. Knouse, *supra*. The only witness who attempted to testify for the objector as to the value of the land was the objector himself. He has lived on this land, and farmed it, since 1919 with the exception of about 10 months when he was in the armed forces of his country. He described the land, about 80 acres of which were pump irrigated, the crops growing thereon, the yield thereof, and the improvements. That he was qualified to testify as to the fair and reasonable value thereof is evidenced by our holdings in Borden v. General Insurance Co., 157 Neb. 98, 59 N. W. 2d 141, and Knouse v. Knouse, *supra*. But no attempt was made to establish the fair and reasonable market value of the land at the time of sale by this witness. All he testified to in that regard is that "it should bring better than $50,000." We do not think this is evidence upon which to base any finding as to the fair and reasonable market value of the land, but assuming that it is we do not think it is sufficient to establish that the land did not bring its fair and reasonable market value, especially when we consider

the fact that the referee, who was appointed by the court and who was familiar with the land, testified that he thought it had brought its fair and reasonable value.

The objector also set out that a considerably higher bid had been submitted for the real estate; that being the offer of Henry C. Bjerrum in the amount of $49,000. That a substantially increased offer can be the basis for a trial court ordering a resale is evidenced by our holdings in Siekert v. Soester, *supra;* First Nat. Bank v. First Trust Co., 145 Neb. 147, 15 N. W. 2d 386; and Knouse v. Knouse, *supra.* As stated in Siekert v. Soester, *supra*: "Substantially increased offers to a referee for property sold by him, made before confirmation of the sale to the highest bidder, are sufficient evidence to support a finding of the trial court in the exercise of its judicial discretion that confirmation should be denied and a new sale ordered." In Siekert v. Soester, *supra,* the upset bid was an increase of 7.8 percent; in First Nat. Bank v. First Trust Co., *supra,* 8 percent; and in Knouse v. Knouse, *supra,* 5.4 percent.

However, as we said in County of Lancaster v. Schwarz, *supra*: "An upset bid, made after the judicial sale has been held and prior to its confirmation by the court, is relevant only to the extent that it bears upon the fairness of the sale and the adequacy of the highest bid at the advertised judicial sale. * * * The upset bid to be effective must be substantial and material, and not merely nominal; otherwise it would not tend to establish fraud or unfairness at the judicial sale or the inadequacy of the highest bid procured at such sale. Whether such a bid is sufficient to warrant a resale or a reopening of the bidding is largely a discretionary matter with the trial court. It follows that the discretion of the court to reject the high bid at the judicial sale gains latitude as the upset bids become larger. * * * The mere fact that a higher upset bid has been received is not a sufficient reason of itself to refuse to confirm a judicial sale. The court will not

ordinarily refuse to confirm a sale which has been regularly held and fairly conducted. An upset bid should be considered only when it affords convincing proof that the property was sold at an inadequate price and that a just regard for the rights of all concerned and the stability of judicial sales permit its acceptance. * * * In determining whether an upset bid is sufficient to sustain a finding that the price obtained at judicial sale was inadequate, the court must exercise the discretion vested in it in accordance with established legal principles." The court therein goes on to say: "If upset bids were permitted and accepted under any and all circumstances, the holding of judicial sales would become only a means of bidding on the property instead of an opportunity to purchase it. Bidders would naturally pass up the judicial sale and place their bids with the court immediately prior to the hearing on confirmation and thereby eliminate the risk of loss by depreciation in the value of the property pending confirmation. Such procedure seeks to deprive a purchaser at judicial sale of the property if the bidder making the upset bid thinks the purchase an advantageous one and leaves it to the buyer if he thinks the purchase unwise. The effect of such a procedure would be to chill the bidding at judicial sales and would largely eliminate the purpose for which they are held."

The sale was widely advertised by the referee, not only by the required legal notice but by display advertising in newspapers having local circulation as well as in those having state-wide circulation and by distribution of handbills in the neighboring towns. In the neighborhood of $150 was expended by the referee for that purpose. Some 24 or 25 people attended the sale, including both the objector and Bjerrum. There appears to have been spirited bidding by those present as evidenced by the number of bids received by the referee. The 360 acres were offered for sale by the referee as a unit and in two tracts, one of 120 acres and the other

of 240 acres. The objector bid as high as $37,000 on the 240-acre tract, which was apparently the improved home place, while Bjerrum testified he bid as high as $46,600 on the entire tract. The sale was opened at 2 p.m., and was held open for about 2½ hours. The referee sold the land as a unit to the Wagners. Both the objector and Bjerrum were present when the sale was closed and the objector, when asked by the referee if he should close the sale on the $48,000 bid of the Wagners, told him to "Sell it." The referee, who testified he thought the land sold for its fair and reasonable value, then closed the sale, having accepted the $48,000 bid of the Wagners. The Wagners thereupon paid the sum of $7,200 to the referee, that being 15 percent of their accepted bid.

There is no question but what the sale was well advertised, well attended, and fairly conducted, and resulted in spirited bidding. The increased offer of Bjerrum is only a 2.1 percent increase over the final bid received and accepted by the referee and if we consider the $150 expended by the referee for advertising, without considering any increase in expense because of additional fees that may be allowed because of a resale, the increase is only about 1.8 percent. Such increase is not substantial and, as suggested in County of Lancaster v. Schwarz, *supra,* to permit such a small increase to upset a judicial sale fairly had and at which everyone present was given ample opportunity to bid would be to chill the bidding at judicial sales and largely eliminate the purpose for which such sales are held.

We have come to the conclusion that the trial court abused its discretion in refusing confirmation, sustaining the objections filed, and ordering a resale. We therefore reverse its order doing so and remand the cause to the district court with directions to overrule the objections filed to the referee's sale; to reject the offer of Henry C. Bjerrum to increase the bid to $49,000; to approve the referee's report; to confirm the sale made

by him to the Wagners as shown by his report filed on June 22, 1959; and for such other and further orders as may become necessary to fully complete the referee's sale and the distribution of the proceeds resulting therefrom. All costs of this appeal are taxed to the objector.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., dissenting.

The cases cited in the majority opinion correctly state the law on the issues raised in them. My dissent is directed to the fact that they have no application to the present case.

In the instant case the judicial sale produced a bid of $48,000. After the sale and before the hearing on confirmation an additional bid of $1,000, which I shall hereafter refer to as a jump bid, was guaranteed if a resale of the property was permitted. The trial court refused to confirm the sale and ordered a new sale. It is my contention that the granting of a resale under these circumstances is wholly within the discretion of the trial court and not subject to review.

This court has uniformly held that, where a jump bid has been made, a resale is within the discretion of the trial court. The rules announced in the majority opinion have been applied only where the trial court confirmed the sale and an appeal was taken therefrom. We stated the rule in Siekert v. Soester, 144 Neb. 321, 13 N. W. 2d 139, 152 A. L. R. 527, as follows: "According to the third doctrine (See 11 A. L. R. note, pp. 417 to 419, inclusive), where there has been an advanced bid before confirmation, the entire matter of confirmation of judicial sales is left with the trial court, to be confirmed or not according to its judicial discretion. This doctrine is the one heretofore approved and adopted by this court. True, in several cases it has been held by this court that a judicial sale will not be set aside on account of mere inadequacy of price, unless such inadequacy is so gross as to make it appear that it was the result of fraud or mistake, or to shock the conscience of the

court. But in these cases there was no evidence that others were willing to pay more." Other cases to this effect are: State Bank v. Green, 11 Neb. 303, 9 N. W. 36; Prudential Real Estate Co. v. Hall, 79 Neb. 805, 113 N. W. 243; Crews v. Alberts, 124 Neb. 671, 247 N. W. 602; State ex rel. Sorenson v. Denton State Bank, 126 Neb. 486, 253 N. W. 670; First Nat. Bank v. First Trust Co., 145 Neb. 147, 15 N. W. 2d 386; County of Nance v. Thomas, 146 Neb. 640, 20 N. W. 2d 925; County of Gage v. Beatrice Nebraska Water Co., 147 Neb. 236, 22 N. W. 2d 696; Ehlers v. Campbell, 147 Neb. 572, 23 N. W. 2d 727; Knouse v. Knouse, 157 Neb. 748, 61 N. W. 2d 388. The opinion of the majority overrules the holdings of the foregoing cases without doing so in terms. I have not found a single case in this state which reverses an order of the trial court in refusing to confirm a sale and ordering a new sale where a jump bid assures a higher bid on the resale. In Siekert v. Soester, *supra,* the highest bid was $3,525 and the jump bid $3,800, an increase of $275. This court refused, under the foregoing rule, to interfere with the discretion of the trial court in denying confirmation and granting a resale. In First Nat. Bank v. First Trust Co., *supra,* this court sustained the action of the trial court in setting aside a confirmation already entered and ordering a new sale on an assured jump bid of $1,000. I submit that the order of the trial court directing a new sale in the present case should be affirmed under the foregoing authorities.

It is the duty of the trial court to secure the highest possible price for property sold at judicial sale. In accomplishing this result the trial court has a broad discretion in determining whether or not a sale should be confirmed. If the trial court confirms the sale, the rules cited by the majority will be applied on appeal. If a resale is granted after a larger bid is assured on resale, the discretion of the trial court has not, previous to this case, been subject to review. I submit that the

rule heretofore existing is the proper one if trial courts are to follow the injunction imposed on them to obtain the highest price possible for property sold at judicial sale. In many instances, particularly in times of economic stress, judicial sales do not produce adequate bids, or any bids at all. To take from trial courts the discretion to refuse confirmation and grant a resale where an increased bid has been assured does not appear to be in the public interest.

The duty of an appellate court to protect its own jurisdiction and powers is no greater than its duty to protect the jurisdiction and powers of the courts inferior to it. I disagree with the action of this court in arrogating to itself the right to review the action of the district court in a matter that has been traditionally the exclusive prerogative of the district courts.

CHAPPELL, J., dissents separately.