STEWART W. KLEEB, APPELLEE, v.
ALLENE D. KLEEB ET AL., APPELLEES,
WILMA E. ASKEY AND ARDEN L. ASKEY, APPELLANTS.

316 N.W.2d 583

Filed February 26, 1982. No. 43581.

James E. Case of Case & Reinsch, P.C., for appellants.

Ronald D. Svoboda and David V. Chebatoris of Clements, Svoboda & Chebatoris for appellee Stewart W. Kleeb.

Jim R. Titus of Peterson, Bowman & Johanns for appellee Lauritzen.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

BRODKEY, J., Retired.

Wilma E. Askey and Arden L. Askey, wife and husband, defendants and appellants herein, appeal to this court from an order entered by the District Court of Cass County, Nebraska, confirming the sale of certain real property, pursuant to an order of the court entered in a partition action, over objections to such confirmation filed by the appellant Wilma E. Askey. We affirm.

On September 18, 1979, Stewart W. Kleeb, the plaintiff-appellee herein, filed a petition in the District Court seeking to quiet title to a 162-acre tract in Cass County, praying that the court determine the interests owned in the property by the heirs of Elsie A. Kleeb and to partition the property, with the proceeds to be divided among the heirs in accordance with their shares as determined by the court. On January 25, 1980, the court entered an order quieting title to the property and confirming the shares owned in said property as follows: Stewart W. Kleeb, an undivided one-sixth interest; Allene D. Kleeb, an undivided one-sixth interest; Wilma E. Askey, an undivided one-third interest; and Velma M. Jezbera, an undivided one-third interest. The court also appointed a referee to partition the real estate.

On February 26, 1980, the referee filed a report with the court in which he determined that the property could not be partitioned and divided between the owners in kind, as it would result in tracts of land too small to farm adequately. The referee found that there were limestone deposits under the property and recommended that the real estate be sold and the proceeds divided among the owners. The court subsequently ordered the premises to be sold at a public sale

and authorized the referee to drill several core samples of the mineral deposits. On March 4, 1980, the referee filed his bond, and notice of the sale was published. The property was sold on April 17, 1980, to Kenneth P. Lauritzen, an appellee herein, who purchased the premises for the sum of $181,440.

On April 24, 1980, Wilma Askey filed objections to the confirmation of the referee's sale of the property to the high bidder at the sale, Kenneth Lauritzen. A hearing was held on the motion for confirmation of the sale and the objections thereto filed by appellant Wilma E. Askey, following which the court confirmed the sale to Lauritzen. In their brief on appeal to this court, the appellants make the following three assignments of error: "1. The District Court erred in determining that the requirements of Section 25-520.01 R.R.S. Neb., 1943 were satisfied. 2. The District Court erred in confirming the sale in determining that the highest bid at the sale was adequate and in determining that a resale would not bring a substantially greater price. 3. The District Court erred in determining that the evidence of posting of notice within the Courthouse was sufficient to satisfy the requirement of posting at the front door of the courthouse."

In its memorandum opinion filed on June 3, 1980, the court found that the sale had been "thoroughly adver-. tised" and that the posting of the notices within the courthouse was sufficient to satisfy the requirements of posting at the front door. The court also found that the sale was fairly conducted and that there was no adequate evidence presented to support a belief that a resale would bring a substantially greater price. The court further found: "The oral testimony is to the effect that some unknown party had offered an increase of $50.00 per acre or a total of $8,100.00 in excess of the accepted bid at the sale. The purported increase bid is by a party unknown and it is affirmatively stated that the bid is open only for one day. There are no pleadings or deposit of any nature which might support the bid or

any evidence which would permit a new sale to start at the point of the highest offer. . . . The amount of increase is approximately 4.40 percent which in view of the amount involved is not a substantial amount." The court thereupon ordered the confirmation of the sale and ordered the referee to convey the premises to appellee Lauritzen.

We begin our discussion of this case by noting that the standard of review by this court in partition actions is well established. On appeal from a decree in an action in equity the Supreme Court must retry the issues of fact and, on a trial de novo, reach independent conclusions without regard to the conclusions reached by the District Court. *Frankenberger v. Holm*, 154 Neb. 80, 46 N.W.2d 901 (1951); Neb. Rev. Stat. § 25-1925 (Reissue 1979). However, on appeal in equity cases, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying. *Cofer v. Perkins*, 199 Neb. 327, 258 N.W.2d 807 (1977). It is also well established that the confirmation of judicial sales is left to the judicial discretion of the trial court. "The discretion to be exercised is not arbitrary, however, but should be one which is sound and equitable in view of all the circumstances. The court must act in the interest of fairness and prudence, and with a just regard to the rights of all concerned and the stability of judicial sales." *Hull v. Hull*, 183 Neb. 773, 776, 164 N.W.2d 455, 458 (1969). See, also, *Michelson v. Wagner*, 170 Neb. 28, 101 N.W.2d 498 (1960). We also note that in regard to appellee Lauritzen, a successful bidder at a judicial sale becomes a party to the proceedings and may appear and urge or object to confirmation. *Michelson v. Wagner, supra.*

The appellants contend that the District Court erred in determining that the posting of notice within the Cass County Courthouse was sufficient to satisfy the requirements of Neb. Rev. Stat. § 25-1529 (Reissue 1979) that the posting of notice must be at the front

door of the courthouse. In this regard, § 25-1529 provides in pertinent part: "Lands and tenements taken in execution shall not be sold until the officer causes public notice of the time and place of sale to be given. The notice shall be given . . . by posting a notice on the courthouse door . . . ."

The evidence in the record reveals that a notice of the public sale, setting forth the mineral and farm nature of the premises, as well as information as to the time, place, and terms of the sale, was posted at the Cass County Courthouse on a bulletin board located beside the south courthouse door. A second notice was also posted on a bulletin board in the office of the Cass County treasurer. It appears that the notices were posted on the bulletin boards at the specific direction of the Cass County clerk. The appellants, however, urge this court to apply a literal interpretation to the statute's requirement that the notice be posted on the door of the courthouse. This we decline to do.

Our review of the case law has revealed that several other jurisdictions have been presented with this same issue, and have generally concluded that the posting of a notice of sale on a public bulletin board in close proximity to the courthouse door will satisfy the requirement that the notice be posted on the door. In *Hoskins v. Iowa Land Co.*, 121 Iowa 299, 300-01, 96 N.W. 977, 978 (1903), the Iowa Supreme Court stated: "While the statutory directions as to tax sales are to be strictly construed, it would, we think, border upon the absurd to hold that the requirement for posting upon the 'courthouse door' is not fairly and fully complied with by posting upon a bulletin board at the door. The evident design of the law is to have the notice in a public place, easy of access, and of such notorious location that no one need be misled or mistaken as to the place where it can be seen. 'On the door' does not necessarily mean on the swinging panel which fills the opening or entrance to the building. A conspicuous posting upon the building, at the side of the

opening, or upon a separate board or panel or bulletin kept there for that purpose, is sufficient, to all reasonable intents and purposes."

The Texas Supreme Court reached the same conclusion in *Howard v. Fulton*, 79 Tex. 231, 236, 14 S.W. 1061, 1062 (1891), which stated: "Reasons readily suggest themselves why the doors of a costly public building should be neither defaced by posting notices upon them nor incumbered by bulletin boards, and none is seen why a notice posted near the door and in immediate view of it does not fully meet the purpose of the law in regard to legal notices . . . ." See, also, *Matson v. Federal Farm Mortgage Corporation*, 151 S.W.2d 636 (Tex. Civ. App. 1941); *Sims v. Crabtree*, 166 Tenn. 508, 63 S.W.2d 662 (1933); 47 Am. Jur. 2d *Judicial Sales* § 85 (1969).

The purpose of § 25-1529 is to inform the public as to the time, place, and date of the public sale, in addition to a description of the property and the terms of sale. The evidence in the record clearly indicates that the notices posted on the public bulletin boards provided in the Cass County Courthouse effectuated the statute's purposes. In this regard, we have previously held that the requirements of § 25-1529 may be satisfied by substantial compliance. *Hollstein v. Adams*, 187 Neb. 781, 194 N.W.2d 216 (1972). We therefore determine that the phrase "on the courthouse door" is to be given a practical and reasonable interpretation, rather than a literal or technical construction as urged by the appellants.

We turn next to appellants' allegation that the trial court erred in determining that the requirements of Neb. Rev. Stat. § 25-520.01 (Reissue 1979) had been satisfied. Section 25-520.01 provides, in part, that where a notice of publication is given as authorized by law, the party maintaining the action "shall within five days after the first publication of notice send by United States mail a copy of such published notice to each and every party appearing to have a direct legal interest in

such action or proceeding whose name and post-office address are known to him. Proof by affidavit of the mailing of such notice shall be made by the party or his attorney and shall be filed . . . within ten days after mailing of such notice." The appellants contend that the sale must be set aside because the notice was not mailed within the prescribed time period and that it was not received until after the sale.

A review of the record convinces us, however, that there was compliance with the requirements of § 25-520.01, notwithstanding the fact that the notice in question was mailed on Monday, March 17, 1980, rather than on Saturday, March 15, 1980, the latter date being normally the fifth day after the first publication of notice. It is clear that the trial court apparently felt that the mailing of the notice upon the following Monday, rather than on Saturday, was not a violation § 25-520.01, as Saturday and Sunday were nonjudicial days and the filing of the notice on the following Monday was appropriate. We agree. See, Neb. Rev. Stat. § 25-2221 (Reissue 1979); *Ruan Transport Corp. v. Peake, Inc.*, 163 Neb. 319, 79 N.W.2d 575 (1956).

We now discuss appellants' contention and assignment that the District Court erred in determining that the highest bid at the sale was adequate and in determining that a resale would not bring a substantially greater price. This involves two alleged "upset" bids, one made on the morning the hearing on the motion for confirmation was heard; the second allegedly made after the confirmation by the trial court and pending the present appeal of the matter to this court. With reference to the first alleged upset bid, attorney Lynn McHugh, the referee appointed by the court, after testifying that he held the sale in the matter on April 17th at 2 p.m., that the sale was regularly held under the terms and conditions of the published notice, and that he felt the sale was fairly conducted and that the property was sold for a reasonable and adequate price, to wit, $181,440 to the purchaser Kenneth Lauritzen,

was asked about the upset bid as follows: "Q— Have you been informed this morning that an offer in writing has been made to the owners of the property for a sum $8,100.00 higher in gross for the purchase of this real estate? . . . A— Yes." Attorney Ronald Svoboda also testified at the hearing on confirmation, and his testimony was as follows: "Q— Mr. Case asked you a few questions about whether or not you knew of an offer of purchase for this property that was submitted by a third party this morning and you indicated that you did know of this. Did you know anything of the terms of this bid, if you want to call it a bid? A— As I recall, the bid was for $50.00 per acre more than the high bid of $1,120.00 which Kenney Lauritzen has at 162 acres, that would be $8,100.00, I believe. Q— Do you know any other terms? A— There was a hundred dollar check deposited with Mr. Case, I believe, this morning with the balance to be paid upon confirmation. And his offer was to be good only for June 2nd of 1980." No other details of the upset were testified to, including the name of the bidder. As previously stated, the trial judge in his opinion noted that there were no pleadings or deposits to support the bid, nor was there any evidence that a new sale could start at the point of such upset bid, which was only open for that one day. Also, the court found that the increase was not a substantial amount. It is the general rule that confirmation of judicial sales rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of such discretion. Inadequacy of price is not of itself sufficient to warrant a resale unless it appears that resale would probably produce a higher price. *Michelson v. Wagner*, 170 Neb. 28, 101 N.W.2d 498 (1960). An upset bid following a judicial sale and before a final confirmation should be considered only when it affords convincing proof that the property was sold at an inadequate price and that a just regard for the rights of all concerned and the stability of judicial sales permits its acceptance. *Glaser v. Weinberger*, 188 Neb.

205, 196 N.W.2d 113 (1972); *Hull v. Hull*, 183 Neb. 773, 164 N.W.2d 455 (1969). The trial court was well within its discretion in refusing to set aside the alleged upset bid made by an unknown party, and especially in the absence of any convincing evidence that a resale would result in a larger price. While it is true that the District Court strives to obtain the best price possible for the property it sells at public sale, it must also give consideration to the rights of the purchaser and the stability of judicial sales, particularly where the sale was free of fraud and an adequate price has been realized. This court's attitude toward upset bids is well expressed in the case of *Michelson v. Wagner, supra,* where we stated at 34, 101 N.W.2d at 502: "'If upset bids were permitted and accepted under any and all circumstances, the holding of judicial sales would become only a means of bidding on the property instead of an opportunity to purchase it. Bidders would naturally pass up the judicial sale and place their bids with the court immediately prior to the hearing on confirmation and thereby eliminate the risk of loss by depreciation in the value of the property pending confirmation. Such procedure seeks to deprive a purchaser at a judicial sale of the property if the bidder making the upset bid thinks the purchase an advantageous one and leaves it to the buyer if he thinks the purchase unwise. The effect of such a procedure would be to chill the bidding at judicial sales and would largely eliminate the purpose for which they are held.'"

The record reveals the sale was widely advertised, both by newspaper ads and the posting of sales bills, and there is evidence in the record that the sale was fairly conducted and the property sold for a reasonable and adequate price. The primary concern of the appellants appears to be that proper consideration was not given to the value of minerals in the land. However, the record clearly indicates that all the local quarry companies were given copies of the analysis of the core samples taken from the property in question and had

access to the core samples for inspection. Two of the mining companies in the area have mines that border the real estate, with the mine of American Cyanamid going right up to the property line. These local quarry companies had representatives at the sale, and the mineral values of the land were emphasized in the promotion and advertisement of the sale. At no time did Mrs. Askey ever make a bid or upset bid on the property. No evidence other than the upset bid referred to above, and the additional one subsequently discussed herein, together with speculation about possible gross revenue that mining might produce, was submitted to show inadequacy of price, or more particularly that a resale would produce a higher price.

Subsequent to the confirmation of the sale by the trial court and during the pendency of the appeal to this court, the appellants Askey and the appellee Stewart W. Kleeb filed a joint motion in this court for an order remanding the matter to the District Court of Cass County, Nebraska, with an order for a new public sale with the opening bid to be $217,728, alleging that an "upset" bid had been made in a total amount of $217,728 by NEBCO, Inc., in an amount 20 percent greater than the original bid made by appellee Lauritzen in the amount of $181,440. They also allege an earnest money deposit of 15 percent has been made by the bidder to the referee. They allege that the upset bid was made on November 10, 1980, and their joint motion was filed in this court on November 20, 1980. Their contention is that this latest upset bid is being made prior to confirmation of the sale, because of the fact that the matter is still on appeal to this court and there is the possibility of reversal by this court. We note that the alleged upset bid referred to is not made a part of the bill of exceptions, nor could it have been, since such alleged upset bid was not in existence until over 5 months after the District Court tried and decided the matter of the confirmation of the sale. This being an action in partition, it is clearly a suit in equity and triable de novo on the record

in this court. *Cofer v. Perkins*, 199 Neb. 327, 258 N.W.2d 807 (1977). Under § 25-1925 a bill of exceptions is the only vehicle for bringing evidence before this court, and evidence which does not appear in such record cannot be considered by this court on appeal. See, also, *Moninger v. Moninger*, 202 Neb. 494, 276 N.W.2d 100 (1979); *Hanson v. Hanson*, 198 Neb. 675, 254 N.W.2d 699 (1977). To hold otherwise would permit evidence to be submitted for consideration without the witness for such evidence being cross-examined as to its truth, completeness, and foundation, and without the introduction of clarifying or opposing evidence. Upset bids to set aside public sales of property in this situation must end somewhere, and we decline to further protract this litigation by remanding the matter to the District Court for further action by way of a new public sale, and we overrule the joint motion of the parties for that purpose.

The order of the District Court confirming the sale to appellee Lauritzen and ordering the referee to convey the premises to him must be, and hereby is, affirmed.

AFFIRMED.

WHITE, J., participating on briefs.