ELSIE SHERMAN ET AL., APPELLEES, V. ELMER SCHULZ ET AL.,
APPELLANTS, CALVIN KROPATSCH, APPELLEE.

370 N.W.2d 123

Filed July 5, 1985.   No. 84-522.

Robert L. Mills of Mills Law Offices, and John M. McHenry
of McHenry & Watson, for appellants.

Raymond E. Baker of Baker & Beck, P.C., for appellee
Neujar.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

PER CURIAM.

Louise Lucas died intestate seized of approximately 200 acres
of northern Polk County land. Elsie Sherman, one of
decedent's heirs, filed this action to partition the land, naming
the remaining heirs, Elmer Schulz, Alma Schulz, Lillian
Wieseman, Margaret Craig, and others, as defendants. After a
determination that Elmer Schulz and Alma Schulz each owned
an undivided one-fourth interest in the land and that Elsie
Sherman, Lillian Wieseman, and Margaret Craig each owned
an undivided one-sixth interest, the land was ordered sold at
public auction. The highest bid at the auction, $95,000, was
made by Gayle Neujahr. Thereafter, all of the heirs objected to
confirmation of the sale on the ground the land was sold for less
than its fair value. The defendant heirs, that is, the heirs other
than the plaintiff Elsie Sherman, made a $150,000 offer. The

trial court nonetheless confirmed the sale to Neujahr and ordered execution of a deed conveying the land to him. The assignments of error urged by the defendant heirs, the appellants herein, challenge the correctness of the trial court's decree. We reverse and remand with directions.

After one of various notices of the sale was first published, Duane Tonniges, who was Elmer Schulz' neighbor, asked whether Schulz planned to bid at the auction, since the land to be sold bordered Schulz' farm. Tonniges and his father had decided, apparently as a neighborly gesture, not to bid on the property if Schulz was going to bid. According to Tonniges, Schulz replied that he personally did not want the property but that a lawyer from Lincoln would represent him at the sale. Schulz also stated that other members of the family were interested in keeping the property in the family. Although Schulz remembered Tonniges' inquiry about the property, he could not remember the details of the conversation. Schulz did not personally attend the sale or bid "because one of the other heirs was intended to do the bidding." Schulz also had a conversation with the successful bidder's father. The elder Neujahr testified that Schulz said he would have a representative at the sale "so it doesn't go too cheap," but Schulz did not remember making such a statement. There was present at the auction, however, an attorney from Lincoln who had a presale discussion with the referee and who bid on behalf of William Francis Craig, the husband of one of the heirs and, for that reason, a named defendant in the suit. This attorney also later filed on behalf of the defendant heirs the objection to confirmation of the sale, as discussed in the first paragraph of this opinion. (The plaintiff-appellee heir filed an objection pro se.) The referee had also received inquiries prior to the auction from Tonniges, the elder Neujahr, Schulz, and the tenant.

The auction, which was well advertised and attended by 35 to 40 persons, was conducted as scheduled. The two bidders at the sale in addition to the Lincoln attorney were Neujahr and the Cyza brothers. Neujahr and Tonniges apparently had an arrangement whereby Neujahr was to bid and the two would divide the property between themselves if the bid were successful. The Cyza brothers made one bid. The attorney and

Neujahr each bid four times.

At the hearing on the heirs' objections, a licensed real estate appraiser testified that in his opinion the land in question, which consists of approximately 44 acres of irrigated ground, 90 acres of dry ground, and 67 acres of pasture ground, has a value of $161,000. It was his view that the buildings on the land had no value. In reaching his opinion the appraiser relied on 12 sales of lands, most of which were within 10 miles to the north of the subject land. It was his thinking that the same pool of buyers would be interested in the subject land as were interested in the lands he used for making the comparison, notwithstanding that a river separated the subject property from the comparison lands. This was so because the subject land and the comparison lands were of the same soil type. Although he testified that the top value for irrigated ground in the comparison sales was $1,100 an acre, he assigned a value of $1,400 an acre to the irrigated ground on the subject land. He also testified the facts that the subject land was not divided into tracts and that the heirs told potential buyers they were going to bid, together with the practice at the referee's sale of writing bidders' names on a board, all served to discourage potential buyers.

It is beyond question that a judicial sale in a partition action is not binding until the entire transaction has been approved by the court. See *Michelson v. Wagner*, 170 Neb. 28, 101 N.W.2d 498 (1960).

While partition actions in and of themselves are equitable in nature and therefore reviewable by this court de novo on the record, it is the general rule that the confirmation of judicial sales rests largely within the sound discretion of the trial court. *Kleeb v. Kleeb*, 210 Neb. 637, 316 N.W.2d 583 (1982). Consequently, the determination of the trial court will not be disturbed on review except for an abuse of such discretion. The trial court may not, however, exercise its discretion arbitrarily, and its determination is to be one which is sound and equitable in view of all the circumstances and in the interest of fairness and prudence, and with a regard for the rights of all concerned and the stability of judicial sales. *Nebraska State Bank & Trust Co. v. Wright*, 213 Neb. 822, 331 N.W.2d 535 (1983); *Kleeb v.*

*Kleeb, supra.*

In *Hull v. Hull,* 183 Neb. 773, 164 N.W.2d 455 (1969), Myrtle Hull, an incompetent, owned an undivided one-third interest in certain property. Her son and guardian, Roy, represented her in the action for its partition. Roy and his brothers, Ross and Herbert, each owned an undivided two-ninths interest in the property. The referee, after a 2-hour sale at which 17 separate bids were received, accepted a final bid of $45,500 by L.W. and J.W. Weber. Thereafter, Roy and Herbert filed objections to the confirmation and offered to bid the sum of $46,800. Objections to the confirmation were also filed on behalf of Myrtle and Ross. All the objections were based on the allegation that the property had sold for an inadequate price. There was testimony at the hearing on the objections that the value of the property ranged from $36,000 to $45,000 and that $45,500 was an adequate, fair, and top price for the property. At the hearing Roy offered a 5-percent increase in the earlier offer on behalf of his brother Herbert. While it was noted, in holding that the trial court abused its discretion in refusing to confirm the sale, that Herbert and Roy were parties to the partition action and that Roy was present at the sale even though he did not bid, it was also observed that the successful bid was adequate and reasonable.

*Rupe v. Oldenburg,* 184 Neb. 229, 166 N.W.2d 417 (1969), affirmed the trial court's refusal to confirm a sale in the face of a later offer which was 10 percent higher than the highest bid. In *Knouse v. Knouse,* 157 Neb. 748, 61 N.W.2d 388 (1953), a 5.4-percent higher, later offer was found sufficient to support the trial court's decision to set aside the referee's sale. In *Siekert v. Soester,* 144 Neb. 321, 13 N.W.2d 139 (1944), a 7.8-percent higher, later offer was held to support the trial court's refusal to confirm a sale.

We conclude from the foregoing analysis of our past decisions that the trial court abused its discretion in this case by rejecting the later offer of the defendant heirs. In reaching that conclusion we are not as persuaded by the percentage difference between the highest bid at the referee's sale and the higher, later offer as we are by the fact that the price obtained at the referee's sale is grossly inadequate. In *Hull v. Hull, supra,* there was

evidence that notwithstanding the higher, later offer, the referee's sale resulted in an adequate and reasonable price for the land. The evidence in the present case, however, is that the successful bid is but 59 percent of the value of the land. Admittedly, the accuracy of the opinion as to the land's value is questioned, but there is no evidence that $95,000 is a fair and adequate price.

Accordingly, we reverse the decree of the trial court and remand the proceeding with the directions that the trial court set aside the referee's sale, accept the offer of the defendant heirs, and order conveyance of the land to them.

However, since the objections of the heirs and the offer of the defendant heirs came late, we tax all costs of sale and litigation of whatsoever nature or character in all courts to all of the heirs. We also award Gayle Neujahr a fee of $5,000 to apply toward the services of his attorney in all courts. The heirs shall be directed to prorate the costs and attorney fee in proportion to their respective ownership interests in the subject land.

REVERSED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., dissenting.

I dissent. As the majority opinion notes, involved in this case is a balancing of two sometimes conflicting policies. On the one hand, courts, when selling land, strive to obtain the best price possible. On the other hand, the rights of the high bidder and the stability of judicial sales must be protected. See, *Nebraska State Bank & Trust Co. v. Wright*, 213 Neb. 822, 331 N.W.2d 535 (1983); *Kleeb v. Kleeb*, 210 Neb. 637, 316 N.W.2d 583 (1982). In my view the trial court correctly exercised its discretion in striking that balance; consequently, I would affirm.

While the majority chooses to focus on the disparity between the highest bid at the referee's sale and the fair value of the land, I would focus on the conduct of the heirs.

The heirs all knew of the sale, the sale was well advertised and attended, and I cannot help but infer from the evidence that the Lincoln attorney attending the sale was bidding in the interest of the heirs. Given that situation, the heirs ought to be made to live with whatever mistake they may have made by not bidding higher at the referee's sale, not for the purpose of punishing

them, but to preserve the integrity and stability of judicial sales and to protect the rights of the highest bidder at such sales.

The view taken by the majority, I fear, destroys the stability and integrity of judicial sales and reduces them to a process whereby one merely bids on property, rather than preserving them as a mechanism to purchase property. Bidding at future judicial sales may well be chilled because a knowledgeable potential bidder will be aware that he may wait until after the sale and then jump in to take the property if he deems the high bidder made a good buy, but let the high bid stand if hindsight persuades him the purchase was not so advantageous. *Michelson v. Wagner*, 170 Neb. 28, 101 N.W.2d 498 (1960); *Glaser v. Weinberger*, 188 Neb. 205, 196 N.W.2d 113 (1972).

To quote from *Hull v. Hull*, 183 Neb. 773, 777, 164 N.W.2d 455, 458 (1969): "It has been generally understood by the profession and enforced by the courts that for obvious reasons one who has been a bidder at the sale by himself or by an agent will not, as a general rule, be permitted to put in an upset bid."

My understanding of *Kleeb v. Kleeb, supra*, is that it was in part on that basis that this court affirmed confirmation of a judicial sale notwithstanding the existence of an almost 5-percent higher, later offer. As the *Kleeb* court stated:

> An upset bid following a judicial sale and before a final confirmation should be considered only when it affords convincing proof that the property was sold at an inadequate price and that a just regard for the rights of all concerned and the stability of judicial sales permits its acceptance. . . . While it is true that the District Court strives to obtain the best price possible for the property it sells at public sale, it must also give consideration to the rights of the purchaser and the stability of judicial sales, particularly where the sale was free of fraud and an adequate price has been realized.

*Id*. at 644-45, 316 N.W.2d at 588.

I am not unmindful of the rule that judicial partition sales are not final in the absence of confirmation, *Michelson v. Wagner, supra*; neither do I forget, however, that ordinarily courts will confirm a sale which has been regularly held and fairly conducted. *Michelson v. Wagner, supra*; *County of Lancaster*

*v. Schwarz*, 152 Neb. 15, 39 N.W.2d 921 (1949). There is no evidence the referee's sale was not fairly conducted. I do not consider writing a bidder's name where all can see it to be unfair; sooner or later the successful bidder's identity must become known.

In my view the highest amount bid at the referee's sale was fair and reasonable in view of the circumstances of this case, irrespective of the fact that it is significantly less than the value of the land.

GRANT, J., joins in this dissent.